**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MELISSA ARMSTRONG and ROLAND NADEAU, individually and on behalf of other similarly situated persons,** | § § § § | |
| **Plaintiffs,** | § § | **Case No. 3:20-3150** |
| **v.** | § § | |
| **Kimberly-Clark Corporation,** | § § | |
| **Defendant.** | § § | |

## <u>COMPLAINT – CLASS ACTION</u>

1.     Plaintiff Melissa Armstrong and Roland Nadeau (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Kimberly-Clark Corporation ("Kimberly-Clark").  On behalf of themselves and the Nationwide and California Subclass they seek to represent, Plaintiffs allege as follows:

## <u>NATURE OF THE ACTION</u>

2.    This is a class action lawsuit seeking recovery for the personal and economic harms caused by the recall of millions of contaminated, dangerous, and now-worthless flushable wipes manufactured by Kimberly-Clark and sold throughout the United States.

3.    The economic toll of the Covid-19 pandemic has not been borne equally by everyone.  Some have emerged from the pandemic's wake as clear winners—like Kimberly-Clark, for example, who has enjoyed a dramatic, pandemic-driven boost in demand for its portfolio of sanitary products, such as wipes, tissues, toilet paper, soaps, and sanitizers.[1]

---

[1] *See* Alexander Bitter, *Kimberly-Clark Gets Coronavirus Sales Lift, Will Resume Share*

4.     But during the same time Kimberly-Clark was crushing analysts already-elevated earnings estimates by capitalizing on the public's heightened concern over the spread of infectious disease—and perhaps in its haste to do so—Kimberly-Clark was neglecting the safety and sanitation responsibilities it owed to its customers and the public at large.

5.     On or about February of 2020, a dangerous bacterial strain called *Pluralibacter gergoviae* contaminated certain lots of Kimberly-Clark's Cottonelle Flushable Wipes and Cottonelle GentlePlus Flushable Wipes products (the "Cottonelle Wipes" of the "Wipes").

6.     Lacking appropriate safeguards to detect and/or remediate bacterial contamination in its products (or otherwise failing to execute them with reasonable care or competence), Kimberly-Clark proceeded to distribute the contaminated Cottonelle Wipes through retail channels and, ultimately, to Plaintiffs and other consumers throughout the United States, Canada, and the Caribbean, including through major retailers such as Amazon, Costco, and Walmart.

7.     Unfathomably, Kimberly-Clark continued its mass, nationwide distribution of contaminated Wipes for another *seven months*—all the while failing to detect the bacterial contamination, warn the public, or otherwise taking any steps whatsoever to remediate the serious health risks to which it had exposed Plaintiffs, similarly situated consumers, and the public at large.

---

*Buybacks*, S&P Global Market Intelligence, July 23, 2020, available at https://www.spglobal.com/marketintelligence/en/newsinsights/latestnewsheadlines/kimberlyclark-gets-coronavirus-sales-lift-will-resume-share-buybacks-59561029 (accessed October 14, 2020).

8.    This despite ample warnings that something was amiss with the Cottonelle Wipes.  Throughout this time frame, consumers documented various irregularities with the Wipes, which—in addition to reports of rashes, infections, and other serious health complications—included reports of dark-brown spots on the surface of some of the Wipes and unusual, mildew-like odors emanating from their packaging, both of which are recognized as indicators of bacterial contamination by manufacturers of cosmetics and personal care products.

9.    These patent irregularities, many of which were reported to Kimberly-Clark directly, unsurprisingly raised concern for ordinary consumers. For a leading multinational manufacturer of hygiene and sanitary products, they unquestionably presented cause for prompt and careful investigation.

10.    But Kimberly-Clark's investigation was neither prompt nor careful.  Only *after* a rash of customer complaints regarding skin irritation, infection, and other complications became overwhelming (and thus a reckoning, inevitable) did Kimberly-Clark conduct the investigation and product testing required to discover the bacterial contamination.

11.    And so, on or about October 9, 2020, Kimberly-Clark announced a nationwide recall (the "Recall") for affected lots of the Cottonelle Wipes.

12.    The Recall has affected thousands of consumers who purchased the Wipes at retail locations, causing damages that include loss of value, anxiety, fright, unjust enrichment, fraud, violation of consumer protection and deceptive practices statutes, as detailed herein.

13.    Further, Kimberly-Clark has left thousands of consumers holding packages of Cottonelle® Flushable Wipes that are unsuitable for their intended use and, thus, entirely worthless.

14.    By this action, Plaintiffs seek to recover, on behalf of themselves and the putative class and subclass of similarly situated consumers, the total losses they have sustained on their purchase of Kimberly-Clark's Cottonelle Wipes.

## PARTIES

15.    Plaintiff Melissa Armstrong is an adult citizen of California who principally resides in Beaumont, California.

16.    Plaintiff Roland Nadeau is an adult citizen of California who principally resides in Oakland, California.

17.    Defendant Kimberly-Clark Corporation is a corporation formed and existing under the laws of Delaware, with its principal place of business located in Irving, Texas.

18.    Kimberly-Clark manufactures various personal care and consumer tissue products and distributes them worldwide under a portfolio of well-known brands, including Huggies, Kleenex, Scott, Kotex, Cottonelle, Poise, Depend, Andrex, Pull-Ups, GoodNites, Intimus, Neve, Plenitud, Viva and WypA.  Kimberly-Clark branded products hold the first or second market-share position in more than 80 of countries in which they are sold.

## JURISDICTION AND VENUE

19.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class

members.  Plaintiffs, as well as most members of the proposed Nationwide Class and California Subclass, are citizens of states different than Kimberly-Clark.

20.  Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) because a Kimberly-Clark resides in this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

21.  This Court has personal jurisdiction over Kimberly-Clark because it maintains its principal place of business in Irving, Texas.

## FACTUAL ALLEGATIONS

### A.  The Cottonelle Wipes and Kimberly-Clark's Misrepresentations About Them

22.  From its statements of broad corporate principles to its packaging designs for particular products, Kimberly-Clark drives home a consistent message about what consumers can expect of its Cottonelle-branded products:  they're quality, clean, gentle, refreshing, hygienic, and—most importantly—safe.

23.  For example, it its Policy Statement on Quality, Kimberly-Clark describes a corporate policy that aims to "design, manufacture and deliver products which meet or exceed customer expectations for quality, performance and value."[2]

24.  Kimberly-Clark emphasizes three primary goals in its "Quality Policy." *First*, "to establish accountability for quality management"; *second*, "to provide a common framework for the establishment and communication of quality practices"; and *third*, "to conduct regular assessment of quality practices to promote continuous process,

---

[2] *See Standards and Requirements - Quality*, Kimberly-Clark Corporation, available at https://www.kimberly-clark.com/en/company/supplier-link/standards-and-requirements/quality (last accessed October 15, 2020).

product and service improvement, and to ensure compliance with applicable laws and regulations."[3]

25.   The principles reflected in the Quality Policy, according to Kimberly-Clark, ensure that it delivers "products and services that consistently meet customer's and consumer's needs, perform as intended and are safe for their intended use."[4]

26.   At every turn, and through nearly-every medium, Kimberly-Clark reminds consumers of this supposed commitment to quality and safety.

27.   For example, On March 16, 2020, when Covid-19 was causing a shortage of toilet paper and flushable wipes in the United States, Cottonelle represented the safety of its products to consumers via Facebook and Instagram posts "[o]ur employees are working around the clock to ensure our products, manufactured right here in the US, gets to you *as quickly and safely as possible.*[5]"

---

[3] *Id.*

[4] *Id.*

[5] *See @Cottonelle*, Instagram, available at https://www.instagram.com/cottonelle, posted March 16, 2020); *see also @Cottonelle*, Facebook Page, available at https://www.facebook.com/cottonelle, posted March 16, 2020) (both last accessed October 15, 2020).



28. Kimberly-Clark describes "Cottonelle® Flushable Wipes [as] fresh, gentle and effective for a truly refreshing clean. They are designed with CleaningRipples™ Texture and the cleansing power of water to deliver long-lasting freshness."[6]

29. In similar fashion, Kimberly-Clark describes "Cottonelle® GentlePlus™ Flushable Wipes [as] made with 95% pure water and enriched with Aloe & Vitamin E to deliver a gentle clean for sensitive skin. They are designed with CleaningRipples™ Texture and the cleansing power of water for a truly refreshing clean. Additionally, they're hypoallergenic, chlorine-free and paraben-free."[7]

30. Kimberly-Clark's product homepage for the Cottonelle Wipes also lists their ingredients, along with the benefits each ingredient brings. Kimberly-Clark represents

---

[6] *Cottonelle® Flushable Wipes*, available at https://www.cottonelle.com/en-us/products/ cottonelle-flushable-wipes (last accessed October 14, 2020).

[7] *Cottonelle® GentlePlus™ Flushable Wipes*, available at https:// www.cottonelle.com/en-us/products/cottonelle-gentle-plus-flushable-wipes (last accessed October 14, 2020).

that the ingredients in the Cottonelle Flushable Wipes, among other things, "helps clean skin," "helps keep skin soft and smooth," and "helps provide a pleasant scent."

31.  Over the past two years, Kimberly-Clark has promoted its Cottonelle Flushable Wipes under its innuendously-themed "down*there*care" marketing campaign.

32.  Consistent with Kimberly-Clark's messaging for the Cottonelle brand generally, the "down*there*care" campaign emphasizes the Cottonelle Wipes' supposed clean, refreshing, and confidence-bringing properties and encourages their use on the most intimate parts of the human body.

33.  As explained by Kimberly-Clark's Chief Brand Manager for Cottonelle, "[t]he down*there*care program urges people to rethink [flushable wipes as part of personal care]—by opening an honest dialogue and highlighting the importance of a superior clean that leaves you feeling clean, fresh and confident."[8]

34.  One commercial, for example, invites consumers to "#TreatYourself with the CleaningRipples of Cottonelle Toilet Paper and Flushable Wipes, the refreshingly clean routine that leaves you feeling . . . *ahhhhhhhh* . . . inside and out."[9]

35.  The Cottonelle Wipes' packaging bears similar representations, emphasizing the products "Cleansing Water & CleansingRipples," as well as the "Refreshingly Clean" feeling they deliver:

---

[8] Cottonelle® brand and Jodi Shays Spark National Dialogue on downtherecare, Kimberly-Clark Corporation March 7, 2019, available at https://www.multivu.com/players/English/8498851-cottonelle-downtherecare-survey/ (last accessed October 14, 2020).

[9] Down*there*care, Cottinelle.com, available at https://www.cottonelle.com/en-us/down-there-care (last accessed October 14, 2020).



36. The Cottonelle Wipes received by Plaintiffs and the, Class members, however, differed markedly from Kimberly-Clark's representations, as detailed below.

**B.  Kimberly Clark's Mass Distribution of Wipes Contaminated with *Pluralibacter gergoviae* to Consumers Nationwide**

37. On or about February of 2020, Kimberly-Clark began distributing for nationwide retail packages of its Cottonelle Wipes that that it knew or should have known were contaminated with a dangerous bacterium called *Pluralibacter gergoviae*.

38. Formerly known as "*Enterobacter gergovia*,"[10] *P. gergoviae* is a rare pathogen linked to "several infections including, but not limited to, lower respiratory tract infections, skin and soft tissue infections and urinary tract infections"[11]

39. According to the FDA, *Pluralibacter gergoviae* poses a particular risk of infection to "[i]ndividuals with weakened immune systems, who suffer from a serious pre-

---

[10] Brady, C., Cleenwerck, I., Venter, S., Coutinho, T., De Vos, P. *Taxonomic evaluation of the genus Enterobacter based on multilocus sequence analysis* (MLSA). Systematic and Applied Microbiology, 36 (2013), at 309-319.

[11] Roseann B. Termini & Leah Tressler, *American Beauty: An Analytical View of the Past and Current Effectiveness of Cosmetic Safety Regulations and Future Direction*, 63 Food & Drug L.J. 257, 274 n.124 (2008).

existing condition, who have been treated surgically or belong to another sensitive group of persons."[12]

40.  Symptoms of *P. gergoviae* infection are indistinguishable in clinical presentation from those of more common bacterial infections.  Yet *P. gergoviae* is stubbornly resistant to antibiotics typically used for those common bacterial infections, making their diagnosis and treatment difficult.

41.  An alarming number of consumers who used the Cottonelle Wipes in the eight months preceding the Recall reported adverse symptoms consistent with exposure to *P. gergoviae*, including everything from general discomfort to severe infections resulting in surgery or death.

42.  A brief sampling of social media reports of consumers during this time frame describe medical complications ranging in severity from mildly-unpleasant to potentially-lethal:

(a) "*I thought it was a stomach bug or something . . .*";

(b) "*daily diarrhea for well over a month . . .*";

(c) "*I became violently ill with intense nausea and vomiting . . .*";

(d) "*an insanely overwhelmingly frustrating itch that will absolutely not go away unless I sit on the business end of a belt sander . . .*";

(e) "*I began to experience tremendous anal itching . . .*";

(f) "*I started having frequent diarrhea . . .*";

(g) "*It's ruined my life . . .*";

---

[12] *See Warning Letter to Paul Xenis, Gilchrest & Saomes*, Food and Drug Administration, MARCS-CMS 485833 March 16, 2016), ¶ 2, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gilchrist-soames-485833-03162016.

(h) *"a summer of misery, nonstop vomiting and diarrhea . . ."*;

(i) *"the last two months have been hell" went from 150lbs to 115 in a month, went to ER, stayed in hospital for a week to save my life, had to have gut surgery . . . "*[13]

43.    Unfortunately, similar accounts abound. Thousands of women have reported urinary-tract infections after using the Wipes which required doctor and hospital visits and Cottonelle's social media accounts have been flooded with accounts of injuries relating to the products—many of which have gone undiagnosed due to the rare strain of bacteria at issue.

44.    Besides the accounts of rashes, infections, and other serious health complications, many other consumer complaints supplied information that should have adequately notified Kimberly-Clark that something was amiss with the Cottonelle Wipes.

45.    Consumers documented various irregularities with the Wipes, included reports of dark-brown spots on the surface of some of the Wipes and unusual, mildew-like odors emanating from their packaging—both of which are well-understood by manufacturers of cosmetics and personal care products to be warning signs of potential product contamination.

46.    Specifically, the reports notifying Kimberly-Clark of unusual odors emanating from the Wipes described a musty odor that consumers variously likened to a "wet dog," an "old dishrag," and "bad sewer water."

---

[13] *See generally* [*Thread*], Reddit, available at    https://www.reddit.com/r/tifu/comments/j8k57e/tifu_by_trying_to_keep_my_butthole_clean_and/ (last accessed October 14, 2020).

47.   A post 4 months prior to the recall (approximately June 2020) alerted Kimberly-Clark of "*DISGUSTING BROWN THINGS FOUND INSIDE!*" to which a Cottonelle brand representative responded that they had "extensive quality measures in-place" and that "this just shouldn't happen."



48.   Similarly, when a customer reported what she described as an allergic reaction prior to the recall, Cottonelle acknowledged that "you shouldn't feel anything like what you've described after using our wipes."



49.   These patent irregularities, many of which were reported to Kimberly-Clark directly, raised concern for ordinary consumers. For a leading multinational

manufacturer of hygiene and sanitary products, like Kimberly-Clark, they unquestionably should have presented sufficient cause for a prompt and careful investigation.

50.   Yet Kimberly-Clark did nothing for months.

**C.   The Recall**

51.   Finally, On October 9, 2020, after the flurry of customer complaints continued to intensify, Kimberly-Clark commenced a voluntary nationwide recall on certain lots of Cottonelle Wipes.

52.   But Kimberly-Clark's efforts have proved lacking in this regard too—its handling of the Recall and communications with affected customers has been inadequate, ineffective, and seemingly insincere.

53.   Kimberly-Clark initially notified consumers of a recall of specified lots of Cottonelle Wipes via a notice posted on its Cottonelle website (the "Recall Notice"), which advised, in part, that:

> Kimberly-Clark announced a product recall of its Cottonelle® Flushable Wipes and Cottonelle® GentlePlus Flushable Wipes sold throughout the United States, Canada and the Caribbean, due to the detection of some Cottonelle® Flushable Wipes that do not meet our high quality standards. The recall is limited to specific lots of Cottonelle® Flushable Wipes and Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020 – September 14, 2020. Please check your lot number above. No other Cottonelle® products are affected by this recall and Flushable Wipes not affected are safe to use.[14]

54.   In the ensuing days, retailers such as Costco and Amazon, began issuing notice to retail purchasers of the Cottonelle Wipes that their "product might contain

---

[14] *See* Product Recall, Cottonelle.com, available at https://www.cottonelle.com/ en-us/recallfaq (last accessed October 15, 2020).

bacterium, Pluralibacter gergoviae, which was detected during product testing." The retailer notices generally directed consumers back to the Cottonelle Recall Notice for additional information.

55. The Recall Notice contains a section directed at answering "Frequently Asked Questions" about the Recall. At best, the answers Cottonelle has provided to the FAQ's are vague, confusing, and incomplete; at worst, they deliberately minimize the health risks posed by the contaminated Wipes.

56. In fact, Kimberly-Clark has surreptitiously made revisions the original language of the FAQ's, revisions that are transparently calculated to minimize consumers' impression of the risks associated with the *P. gergoviae* contamination.

57. For example, the language of the original Recall Notice "describe[ing] what the problem is with the Cottonelle® Flushable Wipes" originally read as follows:

> Some of the affected product could contain the bacterium, Pluralibacter gergoviae, which is a cause of infection in humans, can be an opportunistic pathogen, and is part of the normal intestinal flora. Individuals who have a weakened immune system, suffer from a serious pre-existing condition, have been treated surgically, or belong to another sensitive group of persons are at a particular risk of infection. At this time, there is a low rate of non-serious complaints, such as irritations and minor infections, reported for the affected wipes.

58. But Kimberly-Clark subsequently modified this paragraph, without notice to affected consumers, to claim that the contaminant "naturally occurs," "rarely causes serious infections in healthy individuals," and reduces the categories of high-risk persons from the four groups described above to persons with a "weakened immune systems" only:

> The affected product could show the presence of a bacterium (Pluralibacter gergoviae) which naturally occurs in the

environment and in the human body. Pluralibacter gergoviae rarely causes serious infections in healthy individuals. However, individuals with weakened immune systems are at a heightened risk of infection. Consumers can identify the recalled product by looking for specific lot numbers found on the bottom of the package and verifying it with the lot checker on the Cottonelle® website. At this time there is a low rate of non-serious complaints, such as irritation and minor infection, reported for the affected wipes.

59.   Further, the Cottonelle and retailer notices generally instructed consumers to direct any "concerns" to Kimberly-Clark through the Cottonelle.com webpage or by call[ing] using the "Contact Us" button on our website, or call our Consumer Services line at 1-800-414-0165, Monday - Friday 8 am - 9 pm CT.

60.   However, affected consumers have widely reported receiving error notices when attempting to submit information requests through Cottonelle web portal, being unable to reach any customer services representatives via the phone line, including having their calls disconnected. Thus, Kimberly-Clark's claim that "[a]t this time there is a low rate of non-serious complaints" is entirely misleading given that the statement was made simultaneously with the Recall before consumers could know their health issues were linked to the Wipes and given that the company is wholly unequipped to competently intake consumers' complaints.

61.   As a result, Plaintiffs and similarly situated consumers find themselves stuck with contaminated and worthless Wipes and without any guidance about how to protect themselves from the risks of harm the Wipes might pose to them and their families.

**D.   Plaintiff Melissa Armstrong's Experience with Cottonelle Wipes**

62.     On or about March 13, 2020, Plaintiff Melissa Armstrong purchased a 10-pack of Cottonelle Flushable Wipes from Costco in Moreno Valley, California for $12.49 plus tax, after receiving a $3.00 rebate.

63.     Ms. Armstrong purchased the bulk pack for personal and family use due to the nationwide toilet paper shortage resulting from the Covid-19 pandemic.  Ms. Armstrong and her family used the majority of the 10-pack prior to receiving notice that the Wipes were contaminated.

64.     On or about October 13, 2020, Ms. Armstrong received an email from Costco with a link to a recall notice from Kimberly-Clark, which alerted her that the Cottonelle Flushable Wipe she purchased had been recalled "due to the discovery of possible microbial activity on the wipes."  The notice was vague and did not provide any information regarding potential risks of injury:



Dear Costco Member,

Kimberly-Clark has initiated a voluntary product recall on Cottonelle® Flushable Wipes sold by Costco due to the discovery of possible microbial activity on the wipes.

Costco records indicate that you purchased Cottonelle Flushable Wipes 10 PK (Costco item number #1205611) between February 14, 2020 and October 8, 2020.

Should you have any concerns, please contact us online at Cottonelle.com using the "Contact Us" button on our website, or call our Consumer Services line at 1-800-414-0165, Monday - Friday 8 am - 9 pm CT, with the product readily available.

If you have any of the Cottonelle® Flushable Wipes 10 PK product remaining, please discontinue use and return it to your local Costco for a full refund.

We apologize for any inconvenience this may cause you.

Thank you,

The Kimberly-Clark Corporation

65.     After receiving the recall notice, Ms. Armstrong and her family stopped using the now useless (and, worse, potentially dangerous) Wipes.

66.     Ms. Armstrong also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund.

67.     Despite following the instruction provided on the Cottonelle website, Ms. Armstrong was unable to speak to a Cottonelle representative or obtain any additional information because the customer response team was wholly unequipped to handle the significant but foreseeable volume of customer inquiries.

68.     Ms. Armstrong would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect bacterial contamination of its products.   Further, Ms. Armstrong would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

69.     Accordingly, Ms. Armstrong has been injured by the result of Defendant's unlawful conduct alleged herein.

**E.   Plaintiff Roland Nadeau's Experience with Cottonelle Wipes**

70.     On May 17, 2020, Plaintiff Roland Nadeau purchased an 8-pack of Cottonelle Flushable Wipes from Amazon, for $14.49 plus tax.

71.     Mr. Nadeau purchased the bulk pack for personal and family use due to the nationwide toilet paper shortage caused by the Covid-19 pandemic.  Mr. Nadeau and his family used the majority of the 8-pack prior to receiving notice that the Wipes were contaminated.

72.     On or about October 9, 2020, Mr. Nadeau received an email from Amazon notifying him of a "potential safety issue" related to his purchase of the Wipes. The email notification stated that "Cottonelle has informed us that the product might

17

contain bacterium, Pluralibacter gergoviae, which was detected ruing product testing." It also provided a link to Cottonelle's recall website.

73.    The notice was otherwise vague and did not provide any information regarding potential risks of injury.

74.    After receipt of the recall notice, Mr. Nadeau and his family stopped using the now useless (and, worse, potentially dangerous) Wipes.

75.    Mr. Nadeau also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price he paid for them.

76.    Unfortunately, and despite following the instruction provided on the Cottonelle website, Mr. Nadeau was unable to speak to a Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant but foreseeable volume of customer inquiries.

77.    Mr. Nadeau would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products.  Further, Mr. Nadeau would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself and his family.

## CLASS ACTION ALLEGATIONS

78.    Description of the Classes: Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Federal Rule of Civil

Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiffs seek certification of the following classes of individuals:

(a) The Nationwide Class:

All persons who purchased the recalled Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes between February 7, 2020 and September 14, 2020.

(a) The California Subclass:

All persons who purchased the recalled Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes in California between February 7, 2020 and September 14, 2020.

79. Excluded from the classes are Kimberly-Clark's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

80. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and members of the classes, and those questions substantially predominate:

(a) Whether Kimberly-Clark made and breached implied warranties of fitness and merchantability with respect to the Wipes;

(b) Whether Kimberly-Clark acted negligently with respect to its manufacture, storage, and/or distribution of the Wipes;

(c) Whether Kimberly-Clark negligently misrepresented that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

(d) Whether Kimberly-Clark fraudulently failed to disclose facts pertaining to the Wipe's safety, sanitation, and/or suitability for their intended use;

(e) Whether Kimberly-Clark's misrepresentations and/or omissions pertaining to whether the Wipes were safe, sanitary, and otherwise suitable for their intended use were material;

(f) Whether Kimberly-Clark was unjustly enriched by the conduct and practices described herein;

(g) Whether equity and good conscience requires that Kimberly-Clark make restitution to the Plaintiffs and the class members;

(h) Whether Kimberly-Clark violated the CLRA;

(i) Whether Kimberly-Clark acted unfairly, unlawfully, or otherwise violated the UCL;

(j) Whether Plaintiffs and the class members are entitled to recover actual damages from Kimberly-Clark;

(k) Whether Plaintiffs and the class members are entitled to injunctive relief; and

(l) Whether Kimberly-Clark acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiffs and the class members are entitled to an award of punitive damages.

81.    Numerosity: The proposed classes are so numerous that individual joinder of all members is impracticable.

82.    All members of the proposed classes are ascertainable by objective criteria, including from the records of Kimberly-Clark and its retail partners, which are sufficient

to identify the members of the classes, and include contact information which can be used to provide notice to the class members.

83.   Typicality: Plaintiffs' claims are typical of the claims of the members of the proposed classes. Plaintiffs and all members of the classes have been similarly affected by the actions of Kimberly-Clark

84.   Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of members of the classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

85.   Superiority of Class Action: Plaintiffs and the members of the classes suffered, and will continue to suffer, harm by Kimberly-Clark's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Kimberly-Clark's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)

86.  Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

87.  Kimberly-Clark, as the designer, manufacturer, marketer, distributor, and/or seller of the Cottonelle Wipes, impliedly warranted that the Wipes were of merchantable quality and, among other warranties, that the Wipes would pass without objection in the trade or industry, and were fit for the ordinary purpose for which they are used.

88.  Because of the bacterial contamination described herein, the Wipes cannot perform their ordinary purpose and would not pass without objection in the trade and industry.

89.  Kimberly-Clark breached its implied warranties by selling, marketing, and promoting the Wipes with a defect that consisted of harmful or hazardous bacteria.

90.  Any language used by Kimberly-Clark to attempt to exclude or limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers regarding the existence and nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Kimberly-Clark's knowledge of the defect at the time of sale, it fails to conform to the requirements limiting implied warranties under the applicable law, and because any such limitation creates a warranty that fails of its essential purpose.

91.   By virtue of the defective design or manufacture, Kimberly-Clark knew or should have known that the Wipes were at all times defective, including at the time Plaintiffs and class members purchased the Wipes.

92.   The practices of Kimberly-Clark in manufacturing and selling defective and recalled wipes also constitute a breach of implied warranty of merchantability under the various state statutes where the Plaintiffs reside, and where Kimberly-Clark resides and/or transacts business.

93.   As a direct and proximate cause of Kimberly-Clark's breach of implied warranties, Plaintiffs and class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages for exposure to harmful bacteria and an increased risk of adverse health effects.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)

94.   Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

95.   Kimberly-Clark marketed, distributed, and sold the Wipes with implied warranties that they were fit for the particular purposes of skin hygiene and personal care.

96.   At the time the Wipes were sold, Kimberly-Clark knew, or should have known, that Plaintiffs and the class members would rely on Kimberly-Clark's skill and judgment regarding the efficacy and quality of the Wipes, including their cleaning, sanitary, and hygienic properties.

97.  In reliance on Kimberly-Clark's skill and judgment and the implied warranties of fitness for a particular purpose, Plaintiffs and the class members purchased the Wipes.

98.  The Wipes were manufactured or designed defectively and delivered to consumers in a defective condition. Therefore, they were defective immediately upon purchase, and Kimberly-Clark breached the implied warranty of fitness for a particular purpose to Plaintiffs and all class members.

99.   Any language used by Kimberly-Clark to attempt to limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers regarding the nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Kimberly-Clark's knowledge of the defect at the time of sale, it fails to conform to the requirements limiting remedies under applicable law, and because any such limitation creates a warranty that fails of its essential purpose.

100. By virtue of the defective design or manufacture, Kimberly-Clark knew or should have known that the Wipes were at all times defective, including at the time Plaintiffs and class members purchased the Wipes.

101. The practices of the Kimberly-Clark in manufacturing and selling defective and recalled Wipes also constitute a breach of implied warranty of fitness under the applicable state statutes where the Plaintiffs reside, and where Kimberly-Clark resides and transacts business.

102. As a direct and proximate cause of Kimberly-Clark's breach of implied warranties, Plaintiffs and class members have sustained damages, an economic loss equal to the total purchase price of these unfit Wipes, or the difference in value between the

Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

### COUNT III
### NEGLIGENCE
### (On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)

103. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

104. Kimberly-Clark owed duties of care to Plaintiffs and the class members to safely manufacture, distribute and store the Wipes, which includes obligations to implement and undertake reasonable measures to ensure that the Wipes distributed to consumers like Plaintiffs are free from harmful contaminants, and to conduct reasonable investigation in response to consumer complaints that suggest the Wipes might be contaminated.

105. In addition, after initiating the Recall and voluntarily undertaking to communicate information to Plaintiffs about the affected Wipes and the bacterial contaminants detected in them, Kimberly-Clark owed duties of care to Plaintiffs to supply them reasonably clear, competent, accurate, and complete information regarding the health risks associated with the bacterial contaminant found in its Wipes.

106. The foregoing duties arise by law based on, without limitation, the following factors:

    (a) The high degree of foreseeability that users of the Wipes will suffer injury of the kind described herein;

    (b) The high probability that users of the Wipes, like Plaintiffs, will suffer the kind of injury described herein;

(c) The existence of public health and safety regulations prescribing such duties of care;

(d) The slightness of the burden such a duty would impose on entities like Kimberly-Clark, compared to assigning responsibility for such harm avoidance to Plaintiffs, in light of Kimberly-Clark's exclusive access to the product for inspecting and testing prior to distribution, and in light of its superior knowledge regarding product manufacturing, storage, and distribution practices;

(e) Kimberly-Clark's voluntary undertaking to supply Plaintiffs with information and guidance regarding the health risks posed by *P. gergoviae*; and

(f) public policy considerations.

107. Kimberly-Clark breached the foregoing duties including, without limitation, by:

(a) negligently failing to implement and observe adequate safeguards to prevent product contamination;

(b) negligently failing to implement and observe adequate methods for detecting the presence of bacterial contamination prior to mass distribution of its Wipes;

(c) negligently failing to conduct reasonable investigation or testing of its Wipes after receiving consumer complaints indicating a reasonable likelihood that the Wipes were contaminated or were otherwise unsafe;

(d) negligently and falsely downplaying the medical risks associated with *P. gergoviae* after voluntarily undertaking to supply information and guidance to Plaintiffs about such risks;

(e) negligently failing to adequately staff or equip the Cottonelle customer service team in response to a foreseeable volume of inquiries by consumers affected by the Recall;

(f) committing other negligent acts as described herein.

108. As a direct and proximate cause of the foregoing conduct, Plaintiffs have suffered damages as described herein, in an amount to be proven at trial.

109. In committing the foregoing breaches, Kimberly-Clark acted grossly negligent and/or recklessly, such that an award of punitive damages should issue against Kimberly-Clark in an amount sufficient to punish and deter like conduct.

<u>**COUNT IV**</u>
**FRAUDULENT BY SILENCE OR OMISSION**
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

110. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

111. Kimberly-Clark had a duty to disclose material facts to Plaintiffs regarding bacterial contamination in the Wipes.

112. Kimberly-Clark's duty to disclose arises by law, including without limitation, by virtue of its superior and unique knowledge of the facts and/or its decision to speak.

113. Kimberly-Clark's duty to disclose also arises by virtue of its own culpability in creating Plaintiffs' mistaken belief that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

114. Kimberly-Clark knew or had reason to know that the undisclosed information about the safety and sanitary condition of the Wipes were material to Plaintiffs' decision to purchase them.

115. Kimberly-Clark intended that Plaintiffs rely on its silence as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

116. Plaintiffs in fact relied on Kimberly-Clark silence as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

117. Plaintiffs have sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial.

118. Kimberly-Clark acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## COUNT V
## NEGLIGENT MISREPRESENTATION
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

119. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

120. Kimberly-Clark supplied false information to Plaintiffs for their guidance and benefit in ascertaining the nature, quality, and properties of the Wipes.

121. Kimberly-Clark further supplied false information to Plaintiffs for their guidance and benefit informing them about the relative risks of exposure to Wipes contaminated with *P. gergoviae*.

122. Specifically, Kimberly-Clark failed to exercise due care in verifying that the Wipes were safe, sanitary, and otherwise suitable for their intended use, and in supplying

Plaintiffs misleading information about the risks of risks of exposure to Wipes contaminated with *P. gergoviae.*

123. Plaintiffs relied on the truth and accuracy of the information conveyed by Kimberly-Clark.

124. Plaintiffs are within the class of persons whom Kimberly-Clark intended to guide when it supplied information regarding safety, sanitation, and suitability of the Wipes for their intended use or, alternatively, are within the class of persons to whom Kimberly-Clark knew such information would be communicated by another.

125. Plaintiffs sustained damages when they relied on the truth and accuracy of such information conveyed by Kimberly-Clark because in purchased the Wipes under the belief that they were safe, sanitary and suitable for personal use, and otherwise conformed to the representations made by Kimberly-Clark.

126. Kimberly-Clark acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs, the Nationwide Class, and the California Subclass)**

127. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

128. Plaintiffs conferred a benefit on Kimberly-Clark when they paid Kimberly-Clark for Wipes contaminated with harmful bacteria that resulted in a value far less than the retail price.

129. Kimberly-Clark was unjustly enriched by the sale of the recalled Wipes.

130. Kimberly-Clark nonetheless accepted, appreciated, retained such benefit, with knowledge that it rightly belonged to Plaintiffs.

131. Kimberly-Clark's retention of the consideration paid for the contaminated Wipes is inequitable under the circumstances because, among other reasons, Kimberly-Clark acted unfairly, deceptively, unjustly and/or unlawfully when it sold the contaminated wipes to Plaintiffs.

132. Plaintiffs are therefore entitled to disgorgement and/or restitution of all wrongful gains obtained by Kimberly-Clark as a result of its unjust and inequitable conduct described herein.

## COUNT VII
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (On Behalf of Plaintiffs and the California Subclass)

133. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

134. Kimberly-Clark is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

135. Kimberly-Clark violated Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

136. Kimberly-Clark's unlawful, unfair, and deceptive and practices include:

(a) Selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria;

(b) Omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use;

(c) Misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

(d) Failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes;

(e) Failing to timely recall Wipes that were known or suspected to be contaminated;

(f) Failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated;

(g) Failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and

(h) Failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

137. Kimberly-Clark's failure to detect and prevent the spread of hazardous materials and misrepresentations and omissions relating to the safety of its products are contrary to legislatively-declared public policy that seeks to protect consumers' safety Kimberly-Clark has engaged in "unlawful" business practices by violating multiple laws, including California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, *et seq*., California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq*., California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., and California common law.

138. Kimberly-Clark's unlawful conduct described herein resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Kimberly-Clark's unlawful conduct, consumers could not have reasonably avoided the harms that Kimberly-Clark caused. Kimberly-Clark's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

139. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and class members were injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

140. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and class members' rights. Plaintiffs and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Kimberly-Clark's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT VIII**
**INJUNCTIVE RELIEF FOR VIOLATIONS OF**
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**(On Behalf of Plaintiffs and the California Subclass)**

141. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

142. California's Consumers Legal Remedies Act ("CLRA") sets forth a list of prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

143. The California legislature's intent in promulgating the CLRA is reflected in Section 1760, which mandates that its terms are to be "[c]onstrued liberally and applied

to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

144. Kimberly-Clark's Wipes constitute "goods" under Cal. Civ. Code § 1761(a).

145. Plaintiffs and the class members are each a "consumer" under Cal. Civ. Code § 1761(d).

146. Plaintiffs' purchase of the Wipes constitutes a "transaction" Under Cal. Civ. Code § 1761(e).

147. Kimberly-Clark's has violated, and continues to violate, Civ. Code § 1770, including by:

> (a) representing that the Wipes have characteristics, uses, and/or benefits that they does not have;
>
> (b) advertising the Wipes as safe, hygienic, clean, and/or refreshing, with the intent not to sell them as advertised; and/or
>
> (c) representing that the Wipes have been supplied in accordance with previous representation when they have not;

148. Plaintiffs and class members have suffered harm by the conduct described in this Complaint, and will continue to suffer harm unless such conduct is enjoined by this Court.

## COUNT IX
### ANTICIPATED AMENDMENT TO SEEK DAMAGES FOR VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
#### (On Behalf of Plaintiffs and the California Subclass)

149. Should Kimberly-Clark not comply with Plaintiffs' demand letter pursuant to California Civil Code § 1782, Plaintiffs intends to amend this Complaint to include a

claim for damages under the Consumers Legal Remedies Act on behalf of herself and the California Subclass members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed classes, respectfully request that this Court:

(a) Certify the Nationwide Class and the California Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiffs as Class Representatives and their counsel as Class and Subclass Counsel pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find Kimberly-Clark's conduct was unlawful as alleged herein;

(d) Enjoin Kimberly-Clark from engaging in further unlawful conduct as alleged herein;

(e) Award Plaintiffs and the class members nominal, actual, statutory, compensatory, consequential, and punitive damages;

(f) Award Plaintiffs and class members pre-judgment and post-judgment interest;

(g) Award Plaintiffs and class members reasonable attorneys' fees, costs, and expenses; and

(h) Grant such other relief as the Court deems just and proper.

\*        \*        \*

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 16, 2020               Respectfully submitted,

*/s/ Joshua L. Hedrick*
**Hedrick Kring, PLLC**
Joshua L. Hedrick
Texas Bar No. 24061123
Mark A. Fritsche
Texas Bar No. 24100095
1700 Pacific Ave., Suite 4650
Dallas, TX 75201
Tel:  (214) 880-9600
Fax: (214) 481-1844
Josh@HedrickKring.com
Mark@HedrickKring.com

Patrick J. Stueve*
J. Austin Moore*
Abby McClellan*
Crystal Cook Leftridge*
Michael R. Owens*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
Tel: (816) 714-7100
stueve@stuevesiegel.com
moore@stuevesiegel.com
mcclellan@stuevesiegel.com
cook@stuevesiegel.com
owens@stuevesiegel.com

*Pro Hac Vice Forthcoming

*Attorneys for Plaintiffs and the Proposed Classes*