**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MELISSA ARMSTRONG, ROLAND NADEAU, KARYN RAY, LINDA GORDAN, ERIK HEINRICH, SANDRA GREEN, RUTH BOGUE, ANN RADER, KAREN ZAMBELLI, BARBARA RAUCH, MARK LEVIT, COURTNEY CONLEY, JANNET RAY, TRACEY ALEXANDER, ADRIAN LEWIS, MITCHELL CRAVEN, DANIEL KAPLAN, STEPHEN SIMPSON, ROSETTA TURNER, DONNA STYX, JAMIE CHIPMAN, and DAWN ROTHFELD, individually and on behalf of other similarly situated persons,<br><br>         Plaintiffs,<br><br>v.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>         Defendant. | Civil Action No. 3:20-CV-3150-M LEAD CASE<br><br>(Consolidated With Civil Action No. 3:21-CV-01484-M) |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Melissa Armstrong, Roland Nadeau, Karyn Ray, Linda Gordan, Erik Heinrich, Sandra Green, Ruth Bogue, Ann Rader, Karen Zambelli, Barbara Rauch, Mark Levit, Courtney Conley, Jannet Ray, Tracey Alexander, Adrian Lewis, Mitchell Craven, Daniel Kaplan, Stephen Simpson, Rosetta Turner, Donna Styx, Jamie Chipman, and Dawn Rothfeld (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Kimberly-Clark Corporation ("Kimberly-Clark"). On behalf of themselves and the Nationwide Class and subclasses they seek to represent, Plaintiffs state and allege as follows:

## NATURE OF THE ACTION

1.     This is a class action lawsuit seeking recovery for the personal and economic harms caused by the manufacture, sale, and subsequent recall of millions of contaminated, dangerous, and now-worthless flushable wipes by Defendant Kimberly-Clark.

2.     The economic toll of the Covid-19 pandemic has not been borne equally by all. Some have emerged from the pandemic's wake as clear winners—like Kimberly-Clark, for example, who has enjoyed a dramatic, pandemic-driven boost in demand for its portfolio of sanitary products, which includes wipes, tissues, toilet paper, soaps, and sanitizers.[1]

3.     But during the same time Kimberly-Clark was crushing analysts' already-elevated earnings estimates by capitalizing on the public's heightened concern over the spread of infectious disease—and perhaps in its haste to do so—Kimberly-Clark was neglecting the safety and sanitation responsibilities it owed to its customers and the public at large.

4.     On or about February of 2020, a dangerous bacterial strain called *Pluralibacter gergoviae* contaminated certain lots of Kimberly-Clark's Cottonelle Flushable Wipes and Cottonelle GentlePlus Flushable Wipes products (the "Cottonelle Wipes" or the "Wipes").

5.     Lacking appropriate safeguards to detect and/or remediate bacterial contamination in its products (or otherwise failing to execute them with reasonable care or competence), Kimberly-Clark proceeded to distribute the contaminated Cottonelle Wipes through retail channels and, ultimately, to Plaintiffs and other consumers throughout the United States, Canada, and the Caribbean, including through major retailers such as Amazon, Costco, and Walmart.

---

[1] *See* Alexander Bitter, *Kimberly-Clark Gets Coronavirus Sales Lift, Will Resume Share Buybacks*, S&P Global Market Intelligence, July 23, 2020, available at https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/kimberly-clark-gets-coronavirus-sales-lift-will-resume-share-buybacks-59561029 (last accessed March 29, 2022).

6.    Unfathomably, Kimberly-Clark continued its mass, nationwide distribution of contaminated Wipes for another *seven months*—all the while failing to detect the bacterial contamination, warn the public, or otherwise taking any steps whatsoever to remediate the serious health risks to which it had exposed Plaintiffs, similarly situated consumers, and the public at large.

7.    This despite ample warnings that something was amiss with the Cottonelle Wipes. Throughout this time frame, consumers documented various irregularities with the Wipes, which—in addition to reports of rashes, infections, and other serious health complications—included reports of dark-brown spots on the surface of some of the Wipes and unusual, mildew-like odors emanating from their packaging, both of which are recognized as indicators of bacterial contamination by manufacturers of cosmetics and personal care products.

8.    These patent irregularities, many of which were reported to Kimberly-Clark directly, unsurprisingly raised concern for ordinary consumers. For a leading multinational manufacturer of hygiene and sanitary products, they unquestionably presented cause for prompt and careful investigation.

9.    But Kimberly-Clark's investigation was neither prompt nor careful. Only *after* a rash of customer complaints regarding skin irritation, infection, and other complications became overwhelming (and thus a reckoning, inevitable) did Kimberly-Clark conduct the investigation and product testing required to discover the bacterial contamination.

10.    And so, on or about October 9, 2020, Kimberly-Clark announced a nationwide recall (the "Recall") for affected lots of the Cottonelle Wipes.

11.    The Recall has affected thousands of consumers who purchased the Wipes at retail locations, causing damages that include loss of value, anxiety, fright, unjust enrichment, fraud, violation of consumer protection and deceptive practices statutes, as detailed herein.

12.   Further, Kimberly-Clark has left thousands of consumers holding packages of Cottonelle® Flushable Wipes that are unsuitable for their intended use and, thus, entirely worthless.

13.   By this action, Plaintiffs seek to recover, on behalf of themselves and the putative class and subclass of similarly situated consumers, the total losses they have sustained on their purchase of Kimberly-Clark's Cottonelle Wipes.

## <u>PARTIES</u>

14.   Plaintiff Melissa Armstrong is an adult citizen of California who principally resides in Beaumont, California.

15.   Plaintiff Roland Nadeau is an adult citizen of Arizona who previously resided in California, but now resides in Phoenix, Arizona.

16.   Plaintiff Karyn Ray is an adult citizen of California who principally resides in San Dimas, California.

17.   Plaintiff, Linda Gordan is an adult citizen of Maine who principally resides in Westbrook, Maine.

18.   Plaintiff Erik Heinrich is an adult citizen of New York who principally resides in New York, New York.

19.   Plaintiff Sandra Green is an adult citizen of South Carolina who principally resides in Johns Island, South Carolina.

20.   Plaintiff Ruth Bogue is an adult citizen of Texas who principally resides in San Antonio, Texas.

21.   Plaintiff Ann Rader is an adult citizen of Arizona who principally resides in Phoenix, Arizona.

22.   Plaintiff Karen Zambelli is an adult citizen of Connecticut who principally resides in Stamford, Connecticut.

23.   Plaintiff Barbara Rauch is an adult citizen of Florida who principally resides in North Fort Myers, Florida.

24.   Plaintiff Mark Levit is an adult citizen of Florida who principally resides in Ft. Lauderdale, Florida.

25.   Plaintiff Courtney Conley is an adult citizen of Illinois who principally resides in Chicago, Illinois.

26.   Plaintiff Jannet Ray is an adult citizen of Indiana who principally resides in Merrillville, Indiana.

27.   Plaintiff Tracey Alexander is an adult citizen of Massachusetts who principally resides in Waltham, Massachusetts.

28.   Plaintiff Adrian Lewis is an adult citizen of Mississippi who principally resides in Ridgeland, Mississippi.

29.   Plaintiff Mitchell Craven is an adult citizen of Missouri who principally resides in Kansas City, Missouri.

30.   Plaintiff Daniel Kaplan is an adult citizen of New Jersey who principally resides in Little Egg Harbor, New Jersey.

31.   Plaintiff Stephen Simpson is an adult citizen of New Mexico who principally resides in Albuquerque, New Mexico.

32.   Plaintiff Rosetta Turner is an adult citizen of New York who principally resides in Bronx, New York.

33.   Plaintiff Donna Styx is an adult citizen of North Carolina who principally resides in Havelock, North Carolina.

34.   Plaintiff Jamie Chipman is an adult citizen of Washington who principally resides in Kennewick, Washington.

35.   Plaintiff Dawn Rothfeld is an adult citizen of New York who principally resides in Oceanside, New York.

36.   Defendant Kimberly-Clark Corporation is a corporation formed and existing under the laws of Delaware, with its principal place of business located in Irving, Texas.

37.   Kimberly-Clark manufactures various personal care and consumer tissue products and distributes them worldwide under a portfolio of well-known brands, including Huggies, Kleenex, Scott, Kotex, Cottonelle, Poise, Depend, Andrex, Pull-Ups, GoodNites, Intimus, Neve, Plenitud, Viva, and WypA. Kimberly-Clark branded products hold the largest or second largest market-share position in over 80 countries.

## JURISDICTION AND VENUE

38.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class members. Most Plaintiffs and most members of the proposed Nationwide Class and the various subclasses are citizens of states different than Kimberly-Clark.

39.   Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) because Kimberly-Clark resides in this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

40.   This Court has personal jurisdiction over Kimberly-Clark because it maintains its principal place of business in Irving, Texas.

## FACTUAL ALLEGATIONS

**A. Kimberly-Clark's Misrepresentations Regarding the Condition of its Cottonelle Wipes**

41.    From its statements of broad corporate principles to its packaging designs for particular products, Kimberly-Clark drives home a consistent message about what consumers can expect of its Cottonelle-branded products: they're quality, clean, gentle, refreshing, hygienic, and—most importantly—safe.

42.    For example, it its Policy Statement on Quality, Kimberly-Clark describes a corporate policy that aims to "design, manufacture and deliver products which meet or exceed customer expectations for quality, performance and value."[2]

43.    Kimberly-Clark emphasizes three primary goals in its "Quality Policy." *First*, "to establish accountability for quality management"; *second*, "to provide a common framework for the establishment and communication of quality practices"; and *third*, "to conduct regular assessment of quality practices to promote continuous process, product and service improvement, and to ensure compliance with applicable laws and regulations."[3]

44.    The principles reflected in the Quality Policy, according to Kimberly-Clark, ensure that it delivers "products and services that consistently meet customer's and consumer's needs, perform as intended and are safe for their intended use."[4]

45.    At every turn, and through nearly-every medium, Kimberly-Clark reminds consumers of this supposed commitment to quality and safety.

---

[2] *See Standards and Requirements - Quality*, Kimberly-Clark Corporation, available at www.kimberly-clark.com/en/company/supplier-link/standards-and-requirements/quality (last accessed March 29, 2022).

[3] *Id*.

[4] *Id*.

46.   For example, On March 16, 2020, when Covid-19 was causing a shortage of toilet paper and flushable wipes in the United States, Cottonelle represented the safety of its products to consumers via Facebook and Instagram posts "[o]ur employees are working around the clock to ensure our products, manufactured right here in the US, gets to you *as quickly and safely as possible.*[5]"



47.   Kimberly-Clark describes "Cottonelle® Flushable Wipes [as] fresh, gentle and effective for a truly refreshing clean. They are designed with CleaningRipples™ Texture and the cleansing power of water to deliver long-lasting freshness."[6]

48.   In similar fashion, Kimberly-Clark describes "Cottonelle® GentlePlus™ Flushable Wipes [as] made with 95% pure water and enriched with Aloe & Vitamin E to deliver a gentle clean for sensitive skin. They are designed with CleaningRipples™ Texture and the cleansing

---

[5] *See @Cottonelle*, Instagram, available at https://www.instagram.com/cottonelle, posted March 16, 2020); *see also @Cottonelle*, Facebook Page, available at https://www.facebook.com/cottonelle, posted March 16, 2020) (both last accessed March 28, 2022).

[6] *Cottonelle® Flushable Wipes*, available at https://www.cottonelle.com/en-us/products /cottonelle-flushable-wipes (last accessed March 29, 2022).

power of water for a truly refreshing clean. Additionally, they're hypoallergenic, chlorine-free and paraben-free."[7]

49.   Kimberly-Clark's product homepage for the Cottonelle Wipes also lists their ingredients, along with the benefits each ingredient brings. Kimberly-Clark represents that the ingredients in the Cottonelle Flushable Wipes, among other things, "helps clean skin," "helps keep skin soft and smooth," and "helps provide a pleasant scent."

50.   Over the past two years, Kimberly-Clark has promoted its Cottonelle Flushable Wipes under its innuendo-themed "down*there*care" marketing campaign.

51.   Consistent with Kimberly-Clark's messaging for the Cottonelle brand generally, the "down*there*care" campaign emphasizes the Cottonelle Wipes' supposed clean, refreshing, and confidence-bringing properties and encourages their use on the most intimate parts of the human body.

52.   As explained by Kimberly-Clark's Chief Brand Manager for Cottonelle, "[t]he down*there*care program urges people to rethink [flushable wipes as part of personal care]—by opening an honest dialogue and highlighting the importance of a superior clean that leaves you feeling clean, fresh and confident."[8]

---

[7]    *Cottonelle®   GentlePlus™   Flushable   Wipes*,   available   at https://web.archive.org/web/20201127180542/https://www.cottonelle.com/en-us/products/cottonelle-gentle-plus-flushable-wipes (last accessed March 29, 2022).

[8] Cottonelle® brand and Jodi Shays Spark National Dialogue on downtherecare, Kimberly-Clark Corporation March 7, 2019, available at https://www.multivu. com/players/English/8498851-cottonelle-downtherecare-survey/ (last accessed March 29, 2022).

53.    One commercial, for example, invites consumers to "#TreatYourself with the CleaningRipples of Cottonelle Toilet Paper and Flushable Wipes, the refreshingly clean routine that leaves you feeling . . . *ahhhhhhhh* . . . inside and out."[9]

54.    The Cottonelle Wipes' packaging bears similar representations, emphasizing the products "Cleansing Water & CleansingRipples," as well as the "Refreshingly Clean" feeling they deliver:



55.    Unfortunately for Plaintiffs and the class members, Kimberly-Clark's repeated assurances that consumers can expect "accountability for quality management," "regular assessment[s] of quality," and—above all—products that "are *safe* for their intended use" rang hallow when, as detailed below, the company distributed Wipes contaminated with dangerous bacteria to consumers nationwide for a period of *seven* months, all the while failing to notify customers or otherwise act in accordance with the quality and safety assurances it so frequently conveys to them.

---

[9] Down*there*care, Cottonelle.com, available at https://www.cottonelle.com/en-us/down-there-care (last accessed March 29, 2022).

### B. Kimberly Clark's Mass Distribution of Wipes Contaminated with *Pluralibacter gergoviae* to Consumers Nationwide

56.   On or about February of 2020, Kimberly-Clark began distributing for nationwide retail packages of its Cottonelle Wipes that it knew or should have known were contaminated with a dangerous bacterium called *Pluralibacter gergoviae.*

57.   Formerly known as "*Enterobacter gergovia*,"[10] *Pluralibacter gergoviae* is a rare pathogen linked to "several infections including, but not limited to, lower respiratory tract infections, skin and soft tissue infections and urinary tract infections"[11]

58.   According to the FDA, *Pluralibacter gergoviae* poses a particular risk of infection to "[i]ndividuals with weakened immune systems, who suffer from a serious pre-existing condition, who have been treated surgically or belong to another sensitive group of persons."[12]

59.   Symptoms of *Pluralibacter gergoviae* infection are indistinguishable in clinical presentation from those of more common bacterial infections. Yet *Pluralibacter gergoviae* is stubbornly resistant to antibiotics typically used for those common bacterial infections, making their diagnosis and treatment difficult.

60.   An alarming number of consumers who used the Cottonelle Wipes in the eight months preceding the Recall reported adverse symptoms consistent with exposure to *Pluralibacter gergoviae*, including everything from general discomfort to severe infections resulting in surgery or death.

---

[10] Brady, C., Cleenwerck, I., Venter, S., Coutinho, T., De Vos, P. *Taxonomic evaluation of the genus Enterobacter based on multilocus sequence analysis* (MLSA). Systematic and Applied Microbiology, 36 (2013), at 309-319.

[11] Roseann B. Termini & Leah Tressler, *American Beauty: An Analytical View of the Past and Current Effectiveness of Cosmetic Safety Regulations and Future Direction*, 63 Food & Drug L.J. 257, 274 n.124 (2008).

[12] *See Warning Letter to Paul Xenis, Gilchrest & Saomes*, Food and Drug Administration, MARCS-CMS 485833 March 16, 2016), ¶ 2, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gilchrist-soames-485833 -03162016.

61. A brief sampling of social media reports of consumers during this time frame describes medical complications ranging in severity from mildly-unpleasant to potentially-lethal:

(a) "*I thought it was a stomach bug or something . .* ";

(b) "*daily diarrhea for well over a month . . .*";

(c) "*I became violently ill with intense nausea and vomiting . . .*";

(d) "*an insanely overwhelmingly frustrating itch that will absolutely not go away unless I sit on the business end of a belt sander . . .*";

(e) "*I began to experience tremendous anal itching . . .*";

(f) "*I started having frequent diarrhea . . .*";

(g) "*It's ruined my life . . .*";

(h) "*a summer of misery, nonstop vomiting and diarrhea . . .*";

(i) "*the last two months have been hell" went from 150lbs to 115 in a month, went to ER, stayed in hospital for a week to save my life, had to have gut surgery . . .*"[13]

62. Unfortunately, similar accounts abound. Thousands of women have reported urinary-tract infections after using the Wipes which required doctor and hospital visits, and Cottonelle's social media accounts have been flooded with accounts of injuries relating to the products—many of which have gone undiagnosed due to the rare strain of bacteria at issue.

63. Besides the accounts of rashes, infections, and other serious health complications, many other consumer complaints supplied information that should have adequately notified Kimberly-Clark that something was amiss with the Cottonelle Wipes.

---

[13] *See generally* [*Thread*], Reddit, available at https://www.reddit.com/r/tifu/comments/j8k57e/tifu_by_trying_to_keep_my_butthole_clean_and/ (last accessed March 28, 2022).

64. Consumers documented various irregularities with the Wipes, including reports of dark-brown spots on the surface of some of the Wipes and unusual, mildew-like odors emanating from their packaging—both of which are well-understood by manufacturers of cosmetics and personal care products to be warning signs of potential product contamination.

65. Specifically, the reports notifying Kimberly-Clark of unusual odors emanating from the Wipes described a musty odor that consumers variously likened to a "wet dog," an "old dishrag," and "bad sewer water."

66. A post from four months prior to the Recall (approximately June 2020) alerted Kimberly-Clark of "*DISGUSTING BROWN THINGS FOUND INSIDE!*" to which a Cottonelle brand representative responded that they had "extensive quality measures in-place" and that "this just shouldn't happen."

★☆☆☆☆ Khalida · *4 months ago*
**DISGUSTING BROWN THINGS FOUND INSIDE! BE CAREFUL**
I just bought a big pack today, as I've been using them for 2 months. I happen to look inside the bag to get a few and saw these disgusting brown things looked like worms but dead and squished I'm sure! They were legit all over the wet wipes I've takes pictures and video! I'm so so so disappointed and DISGUSTED



**Response from Cottonelle:**
We're extremely disappointed to see this, Khalida! We have extensive quality measures in-place, this just shouldn't happen! please reach out to us directly so we can learn more and help, 1-877-642-6886 (weekdays, 8:00am – 5:00pm CST). Thank you!

67. Similarly, when a customer reported what she described as an allergic reaction prior to the Recall, Cottonelle acknowledged that "you shouldn't feel anything like what you've described after using our wipes."

★★★★★ **Marjie** · *a month ago*

**Allergic**

I'm allergic to something in these wipes. They made the area down there so itchy and irritated. I don't know what's in it that's doing it to me but I've never use these again. I've never been allergic to other brands

**Response from Cottonelle:**
Cottonelle Brand · *a month ago*

Hi Marjie, your health and comfort are very important to us. I can assure you that what you've experienced is certainly unusual. You shouldn't feel anything like what you've described after using our wipes. Please, reach out to our team at 1-877-856-7268 (Monday through Friday, 8:00am – 5:00pm CST) so we can learn more and see how we can help. Thanks!

68. These patent irregularities, many of which were reported to Kimberly-Clark directly, raised concern for ordinary consumers. For a leading multinational manufacturer of hygiene and sanitary products, like Kimberly-Clark, they unquestionably should have presented sufficient cause for a prompt and careful investigation.

69. Yet Kimberly-Clark did nothing for seven months, neglecting (or simply disregarding) the safety and quality promises it made to its customers, its responsibilities to the consuming public, and its duties under the law. Kimberly-Clark's omission, suppression, and concealment of material facts known only to Kimberly-Clark that the Wipes were potentially unsafe and unsuitable for their intended use form the basis for Plaintiffs' claims described herein.

**C.   The Recall**

70. Finally, On October 9, 2020, after the flurry of customer complaints continued to intensify, Kimberly-Clark commenced a voluntary nationwide recall on certain lots of Cottonelle Wipes.

71. But Kimberly-Clark's efforts have proved lacking in this regard too—its handling of the Recall and communications with affected customers has been inadequate, ineffective, and seemingly insincere.

72. Kimberly-Clark initially notified consumers of a recall of specified lots of Cottonelle Wipes via a notice posted on its Cottonelle website (the "Recall Notice"), which advised, in part, that:

> Kimberly-Clark announced a product recall of its Cottonelle®
> Flushable Wipes and Cottonelle® GentlePlus Flushable Wipes sold
> throughout the United States, Canada and the Caribbean, due to the
> detection of some Cottonelle® Flushable Wipes that do not meet our
> high quality standards. The recall is limited to specific lots of
> Cottonelle® Flushable Wipes and Cottonelle® GentlePlus
> Flushable Wipes manufactured between February 7, 2020 –
> September 14, 2020. Please check your lot number above. No other
> Cottonelle® products are affected by this recall and Flushable
> Wipes not affected are safe to use.[14]

73.   In the ensuing days, retailers such as Costco and Amazon, began issuing notice to retail purchasers of the Cottonelle Wipes that their "product might contain bacterium, *Pluralibacter gergoviae*, which was detected during product testing." The retailer notices generally directed consumers back to the Cottonelle Recall Notice for additional information.

74.   The Recall Notice contains a section directed at answering "Frequently Asked Questions" about the Recall. At best, the answers Cottonelle has provided to the FAQ's are vague, confusing, and incomplete; at worst, they deliberately minimize the health risks posed by the contaminated Wipes.

75.   In fact, Kimberly-Clark has surreptitiously made revisions the original language of the FAQ's, revisions that are transparently calculated to minimize consumers' impression of the risks associated with the *Pluralibacter gergoviae* contamination.

76.   For example, the language of the original Recall Notice "describe[ing] what the problem is with the Cottonelle® Flushable Wipes" originally read as follows:

> Some of the affected product could contain the bacterium,
> Pluralibacter gergoviae, which is a cause of infection in humans, can
> be an opportunistic pathogen, and is part of the normal intestinal
> flora. Individuals who have a weakened immune system, suffer from

---

[14]   *See* Product Recall, Cottonelle.com, available at https://web.archive.org/web/20201010170856/https://www.cottonelle.com/en-us/recallfaq (last accessed March 29, 2022).

a serious pre-existing condition, have been treated surgically, or belong to another sensitive group of persons are at a particular risk of infection. At this time, there is a low rate of non-serious complaints, such as irritations and minor infections, reported for the affected wipes.

77.    But Kimberly-Clark subsequently modified this paragraph, without notice to affected consumers, to claim that the contaminant "naturally occurs," "rarely causes serious infections in healthy individuals," and reduces the categories of high-risk persons from the four groups described above to persons with a "weakened immune systems" only:

> The affected product could show the presence of a bacterium (Pluralibacter gergoviae) which naturally occurs in the environment and in the human body. Pluralibacter gergoviae rarely causes serious infections in healthy individuals. However, individuals with weakened immune systems are at a heightened risk of infection . . . . At this time there is a low rate of non-serious complaints, such as irritation and minor infection, reported for the affected wipes.

78.    Further, the Cottonelle and retailer notices generally instructed consumers to direct any "concerns" to Kimberly-Clark through the Cottonelle.com webpage or by call[ing] using the "Contact Us" button on our website, or call our Consumer Services line at 1-800-414-0165, Monday - Friday 8 am - 9 pm CT.

79.    However, affected consumers widely reported receiving error notices when attempting to submit information requests through Cottonelle web portal, being unable to reach any customer services representatives via the phone line, including having their calls disconnected. Thus, Kimberly-Clark's claim that "[a]t this time there is a low rate of non-serious complaints" is entirely misleading given that (a) the statement was made simultaneously with the Recall before consumers could know whether their health issues were linked to the Wipes, and (b) that the company is wholly unequipped to competently intake consumers' complaints. Further, Kimberly-Clark has not updated or corrected its statement that there is "a low rate of non-serious complaints"

even though it has received thousands of complaints from consumers regarding injuries they have suffered from using the Wipes since the Recall Notice was posted.

80.   As a result, Plaintiffs and similarly situated consumers find themselves stuck with potentially contaminated and worthless Wipes and without any guidance about how to protect themselves from the risks of harm the Wipes might pose to them and their families. Although Kimberly-Clark has quietly mailed prepaid Visa cards issued from MetaBank to a limited number consumers who were able to successfully contact a Kimberly-Clark representative seeking a refund, those cards did not make consumers whole as Kimberly-Clark required consumers to input lot numbers confirming they purchased a recalled product (meaning those consumers who used or threw away recalled products were left without recourse), capped the number of packages each consumer could claim a refund for, and attached to use of the cards a strict set of terms and conditions that included a hard expiration date. Kimberly-Clark chose this course of action to limit its own financial exposure even though it could have easily issued automatic refunds through the retailers from whom the recalled products were purchased.

**D.  Plaintiffs' Experiences with Cottonelle Wipes**

(1)   <u>Plaintiff Melissa Armstrong</u>

81.   On or about March 13, 2020, Plaintiff Melissa Armstrong purchased a 10-pack of Cottonelle Flushable Wipes from Costco in Moreno Valley, California for $12.49 plus tax, after receiving a $3.00 rebate.

82.   Ms. Armstrong purchased the bulk pack for personal and family use in part due to the nationwide toilet paper shortage resulting from the Covid-19 pandemic. Ms. Armstrong and her family used most of the 10-pack before receiving notice that the Wipes were subject to recall.

83.   On or about October 13, 2020, Ms. Armstrong received an email from Costco with a link to a Recall Notice from Kimberly-Clark, which alerted her that the Cottonelle Flushable

Wipe she purchased had been recalled "due to the discovery of possible microbial activity on the wipes." The notice was vague and did not provide any information regarding potential risks of injury:



Dear Costco Member,

Kimberly-Clark has initiated a voluntary product recall on Cottonelle® Flushable Wipes sold by Costco due to the discovery of possible microbial activity on the wipes.

Costco records indicate that you purchased Cottonelle Flushable Wipes 10 PK (Costco item number #1205611) between February 14, 2020 and October 8, 2020.

Should you have any concerns, please contact us online at Cottonelle.com using the "Contact Us" button on our website, or call our Consumer Services line at 1-800-414-0165, Monday - Friday 8 am - 9 pm CT, with the product readily available.

If you have any of the Cottonelle® Flushable Wipes 10 PK product remaining, please discontinue use and return it to your local Costco for a full refund.

We apologize for any inconvenience this may cause you.

Thank you,

The Kimberly-Clark Corporation

84.     After receiving the Recall Notice, Ms. Armstrong and her family stopped using the now useless (and, worse, potentially dangerous) Wipes.

85.     Ms. Armstrong also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund.

86.     Despite following the instruction provided on the Cottonelle website, Ms. Armstrong was unable to speak to a Cottonelle representative or obtain any additional information because the customer response team was wholly unequipped to handle the significant but foreseeable volume of customer inquiries.

87.     Ms. Armstrong would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect bacterial contamination of its products. Further, Ms. Armstrong would not have purchased

the Wipes had she known that they were not safe and suitable for personal use, or that they posed a risk of harm to herself and her family.

88.     Accordingly, Ms. Armstrong has been injured by the result of Defendant's unlawful conduct alleged herein.

 (2)    <u>Plaintiff Roland Nadeau</u>

89.     On May 17, 2020, Plaintiff Roland Nadeau purchased an 8-pack of Cottonelle Flushable Wipes from Amazon, for $14.49 plus tax.

90.     Mr. Nadeau purchased the bulk pack for personal and family use due in part to the nationwide toilet paper shortage caused by the Covid-19 pandemic. Mr. Nadeau and his family used the majority of the 8-pack prior to receiving notice that the Wipes were subject to recall.

91.     On or about October 9, 2020, Mr. Nadeau received an email from Amazon notifying him of a "potential safety issue" related to his purchase of the Wipes. The email notification stated that "Cottonelle has informed us that the product might contain bacterium, *Pluralibacter gergoviae*, which was detected ruing product testing." It also provided a link to Cottonelle's recall website.

92.     The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

93.     After receipt of the Recall Notice, Mr. Nadeau and his family stopped using the now useless (and, worse, potentially dangerous) Wipes.

94.     Mr. Nadeau also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price he paid for them.

95.     Unfortunately, and despite following the instruction provided on the Cottonelle website, Mr. Nadeau was unable to speak to a Cottonelle representative or obtain any additional

information because the Cottonelle customer response team was wholly unequipped to handle the significant but foreseeable volume of customer inquiries.

96.     Mr. Nadeau would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Mr. Nadeau would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or that they posed a risk of harm to himself and his family.

(3)     Plaintiff Karyn Ray

97.     On February 9, March 5, May 27, July 21, July 26, and September 1, 2020, Plaintiff Karyn Ray purchased 8-packs of Cottonelle Flushable Wipes from Amazon, for prices ranging from $10.83-$14.49 plus tax.

98.     Ms. Ray purchased the bulk packs for personal and family use. Ms. Ray and her family used the majority of their purchases prior to receiving notice that the Wipes were subject to recall.

99.     On or about October 9 and October 14, 2020, Ms. Ray received emails from Amazon notifying her of a "potential safety issue" related to her purchase of the Wipes. The email notifications stated that "Cottonelle has informed us that the product might contain bacterium, *Pluralibacter gergoviae*, which was detected ruing product testing." They also provided a link to Cottonelle's recall website.

100.     The email notices stated that at a minimum Ms. Ray's purchases from February 9, March 5, July 26, and September 1, 2020, were impacted by the Recall. The notices were otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

101.    After receipt of the Recall Notices, Ms. Ray and her family stopped using the now useless (and, worse, potentially dangerous) Wipes. Ms. Ray also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

102.    Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Ray was unable to submit refund requests for all her purchases or speak to a Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant volume of customer inquiries.

103.    Ms. Ray would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Ray would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or that they posed a risk of harm to herself and her family.

(4)    Plaintiff Linda Gordan

104.    Between February and September 2020, Plaintiff Linda Gordan purchased a 12-pack of Cottonelle Flushable Wipes from BJ's Wholesale Club, for approximately $15.99 plus tax.

105.    Ms. Gordan purchased the bulk pack for personal and family use due in part to the nationwide toilet paper shortage caused by the Covid-19 pandemic. Ms. Gordan used about half of the 12-pack prior to receiving notice that the Wipes were subject to recall.

106.    On or about October 12, 2020, Ms. Gordan received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of *Pluralibacter gergoviae* bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed

between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

107.    The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

108.    After receipt of the Recall Notice, Ms. Gordan and her family stopped using the now useless (and, worse, potentially dangerous) Wipes. Ms. Gordan also compared the list of affected lot numbers provided by BJ's Wholesale to the Wipes still in her possession at the time and confirmed that the Wipes she had were subject to recall.

109.    Ms. Gordan would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Ms. Gordan would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or that they posed a risk of harm to herself and her family.

(5)    Plaintiff Erik Heinrich

110.    Between February and October of 2020, Plaintiff Erik Heinrich made multiple purchases of bulk 12-packs of Cottonelle Flushable Wipes (504 ct.) from BJ's Wholesale Club, for approximately $15.99 plus tax.

111.    Mr. Heinrich purchased the bulk packs for personal and family use. Mr. Heinrich and his family used the majority of the Wipes they purchased prior to receiving notice that they were subject to recall.

112.    On or about October 12, 2020, Mr. Heinrich received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of *Pluralibacter gergoviae* bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

113.    The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

114.    After receipt of the Recall Notice, Mr. Heinrich and his family stopped using the now useless (and, worse, potentially dangerous) Wipes. Mr. Heinrich also compared the list of affected lot numbers provided by BJ's Wholesale to the Wipes still in his possession at the time and identified nine lot numbers that were subject to recall.

115.    Mr. Heinrich would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Mr. Heinrich would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or that they posed a risk of harm to himself and his family.

(6)    Plaintiff Sandra Green

116.    Between February and September 2020, Plaintiff Sandra Green purchased a 12-pack of Cottonelle Flushable Wipes from Sam's Club, for approximately $14.49 plus tax.

117.    Ms. Green purchased the bulk pack for personal and family use due to the nationwide toilet paper shortage caused by the Covid-19 pandemic. Ms. Green used some of the 12-pack prior to receiving notice that the Wipes were subject to recall.

118.    On or about October 15, 2020, Ms. Green received a letter from Sam's Club notifying her of a "possible bacterial contamination" related to her purchase of the Wipes. The notification stated that "Kimberly-Clark has initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." It also provided a link to Cottonelle's recall website.

119.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

120.    After receipt of the Recall Notice, Ms. Green stopped using the now useless (and, worse, potentially dangerous) Wipes.

121.    Ms. Green would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Ms. Green would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or that they posed a risk of harm.

(7)    Plaintiff Ruth Bogue

122.    Between February and September 2020, Plaintiff Ruth Bogue purchased a 12-pack of Cottonelle Flushable Wipes from Sam's Club, for $14.49 plus tax.

123.    Ms. Bogue purchased the bulk pack for personal and family use due to the nationwide toilet paper shortage caused by the Covid-19 pandemic. Ms. Bogue used about half of the 12-pack prior to receiving notice that the Wipes were subject to recall.

124.    On or about October 15, 2020, Ms. Bogue received a letter from Sam's Club notifying her of a "possible bacterial contamination" related to her purchase of the Wipes. The

notification stated that "Kimberly-Clark has initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." It also provided a link to Cottonelle's recall website.

125.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

126.    After receipt of the Recall Notice, Ms. Bogue stopped using the now useless (and, worse, potentially dangerous) Wipes.

127.    Ms. Bogue would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Ms. Bogue would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or that they posed a risk of harm.

   (8)   Plaintiff Ann Rader

128.    On June 1, June 14, and July 16, 2020, Plaintiff Ann Rader purchased 4 bulk boxes of Cottonelle Flushable Wipes from Sam's Club, for the price of $13.94 each, plus tax.

129.    Ms. Rader purchased the bulk packs for personal and family use. Ms. Rader and her family had not used the packs before receiving notice that the Wipes were subject to recall.

130.    On or about October 15, 2020, Ms. Rader received a letter from Sam's Club notifying her of a "possible bacterial contamination" related to her purchase of the Wipes. The letter stated that "Kimberly-Clark initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." They also provided a link to Cottonelle's recall website and a phone number to call Kimberly-Clark's Consumer Service team.

131.    The letter stated that at a minimum Ms. Rader's purchases from Sam's Club were impacted by the Recall. The notices were otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

132.     After receipt of the Recall Notice, Ms. Rader and her family decided against using the now useless (and, worse, potentially dangerous) Wipes. Ms. Rader also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

133.     Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Rader was unable to submit refund requests for all her purchases.

134.     Ms. Rader would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Rader would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(9)    Plaintiff Karen Zambelli

135.     In approximately August 2020, Plaintiff Karen Zambelli purchased a bulk pack of Cottonelle Flushable Wipes from BJ's Wholesale Club, for the price of $15.99 each, plus tax.

136.     Ms. Zambelli purchased the bulk packs for personal and family use. Ms. Zambelli and her family used the majority of their purchase prior to receiving notice that the Wipes were subject to recall.

137.     On or about October 12, 2020, Ms. Zambelli received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of Pluralibacter gergoviae bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark

recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

138.    The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

139.    After receipt of the Recall Notice, Ms. Zambelli and her family stopped using the now useless (and, worse, potentially dangerous) Wipes. Ms. Zambelli also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

140.    Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Zambelli was unable to submit refund requests for all her purchases or speak to a Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant volume of customer inquiries.

141.    Ms. Zambelli would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Zambelli would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(10)    <u>Plaintiff Barbara Rauch</u>

142.    On April 25, 2020, Plaintiff Barbara Rauch purchased a bulk box of Cottonelle Flushable Wipes from BJ's Wholesale Club, for the price of $15.99 plus tax.

143.     Ms. Rauch purchased the bulk packs for personal and family use. Ms. Rauch and her family used some of their purchase prior to receiving notice that the Wipes were subject to recall.

144.     On or about October 12, 2020, Ms. Rauch received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of Pluralibacter gergoviae bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

145.     The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

146.     After receipt of the Recall Notice, Ms. Rauch and her family stopped using the now useless (and, worse, potentially dangerous) Wipes. Ms. Rauch also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

147.     Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Rauch was unable to submit refund requests for all her purchases or speak to a Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant volume of customer inquiries.

148.    Ms. Rauch would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Rauch would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(11)    Plaintiff Mark Levit

149.    On May 21, 2020, Plaintiff Mark Levit purchased an 8-pack of Cottonelle Flushable Wipes from Amazon for $14.49 plus tax.

150.    Mr. Levit purchased the bulk pack for personal and family use. Mr. Levit and his family used the majority of the 8-pack prior to receiving notice that the Wipes were subject to recall.

151.    On or about October 9, 2020, Mr. Levit received an email from Amazon notifying him of a "potential safety issue" related to his purchase of the Wipes. The email notification stated that "Cottonelle has informed us that the product might contain bacterium, Pluralibacter gergoviae, which was detected during product testing." It also provided a link to Cottonelle's recall website.

152.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

153.    After receipt of the Recall Notice, Mr. Levit and his family stopped using the now useless (and, worse, potentially dangerous) Wipes.

154.    Mr. Levit also visited Cottonelle's recall website to confirm the wipes he purchased were subject to recall and to attempt to obtain a refund.

155.    After inputting his information into the Contact Us form on the website, Mr. Levit later received a prepaid Visa card issued from MetaBank in the mail. After reviewing

MetaBank's data sharing practices and the strict terms and conditions attached to use of the card, Mr. Levit declined to use the card and contacted a MetaBank representative to cancel it.

156.     Mr. Levit would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Mr. Levit would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself and his family.

(12)     <u>Plaintiff Courtney Conley</u>

157.     On approximately July 29, 2020, Plaintiff Courtney Conley purchased a 12-pack of Cottonelle Flushable Wipes from Costco in Illinois for $15.49 plus tax.

158.     Mr. Conley purchased the bulk pack for personal and family use in part due to the nationwide toilet paper shortage resulting from the Covid-19 pandemic. Mr. Conley and his family used most of the 12-pack before receiving notice that the Wipes were subject to recall.

159.     On or about October 13, 2020, Mr. Conley received an email from Costco with a link to a Recall Notice from Kimberly-Clark, which alerted him that the Cottonelle Flushable Wipe he purchased had been recalled "due to the discovery of possible microbial activity on the wipes." The notice was vague and did not provide any information regarding potential risks of injury:

160.     After receiving the Recall Notice, Mr. Conley and his family stopped using the now useless (and, worse, potentially dangerous) Wipes.

161.     Mr. Conley also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund.

162.    Mr. Conley visited Cottonelle's website to confirm the wipes he purchased were subject to the recall and to attempt to obtain a refund.

163.    After inputting his information into the Contact Us form on the website, Mr. Conley later received a prepaid Visa card issued from MetaBank in the mail. After reviewing MetaBanks' data sharing practices and the strict terms and conditions attached to use of the card, Mr. Conley declined to use the card and shred it so that no one in his family would inadvertently use the card.

164.    Mr. Conley would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect bacterial contamination of its products. Further, Mr. Conley would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself and him family.

(13)    <u>Plaintiff Jannet Ray</u>

165.    On September 18, 2020, Plaintiff Jannet Ray purchased a bulk box of Cottonelle Flushable Wipes from Sam's Club, for the price of $13.94 plus tax.

166.    Ms. Ray purchased the bulk packs for personal and family use. Ms. Ray and her family had used part of the packs before receiving notice that the Wipes were subject to recall.

167.    On or about October 15, 2020, Ms. Ray received a letter from Sam's Club notifying her of a "possible bacterial contamination" related to her purchase of the Wipes. The letter stated that "Kimberly-Clark initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." They also provided a link to Cottonelle's recall website and a phone number to call Kimberly-Clark's Consumer Service team.

168.     The letter stated that at a minimum Ms. Ray's purchases from Sam's Club were impacted by the Recall. The notices were otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

169.     After receipt of the Recall Notice, Ms. Ray and her family decided against using the now useless (and, worse, potentially dangerous) Wipes. Ms. Ray also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

170.     Unfortunately, and despite following the instruction provided on the Cottonelle website and submitting her refund request, Ms. Ray never received a refund for all her purchases.

171.     Ms. Ray would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Ray would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(14)     Plaintiff Tracey Alexander

172.     On August 27, 2020, Plaintiff Tracey Alexander purchased 8-packs of Cottonelle Flushable Wipes from Amazon, for the price of $14.38, plus tax.

173.     Ms. Alexander purchased the bulk packs for personal and family use. Ms. Alexander and her family used the majority of their purchases prior to receiving notice that the Wipes were subject to recall.

174.     On or about October 9, 2020, Ms. Alexander received an email from Amazon notifying her of a "potential safety issue" related to her purchase of the Wipes. The email notifications stated that "Cottonelle has informed us that the product might contain bacterium,

Pluralibacter gergoviae, which was detected ruing product testing." They also provided a link to Cottonelle's recall website.

175.    The email notice stated that at a minimum Ms. Alexander's purchase was impacted by the Recall. The notices were otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

176.    After receipt of the Recall Notice, Ms. Alexander and her family stopped using the now useless (and, worse, potentially dangerous) Wipes.

177.    Ms. Alexander also visited Cottonelle's website to confirm the wipes she purchased were subject to recall and to attempt to obtain a refund. Later, a Kimberly-Clark representative contacted Ms. Alexander regarding a refund.

178.    After speaking with a Kimberly-Clark representative, Ms. Alexander later received a prepaid Visa card issues from MetaBank in the mail. After reviewing MetaBank's data sharing practices and the strict terms and conditions attached to use of the card, Ms. Alexander declined to use the card and contacted a MetaBank representative to cancel it.

179.    Ms. Alexander, who has multiple sclerosis, would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Alexander would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(15)    <u>Plaintiff Adrian Lewis</u>

180.     On October 7, 2020, Plaintiff Adrian Lewis purchased a 12-pack of Cottonelle Flushable Wipes from Amazon for $29.99 plus tax.

181.    Mr. Lewis purchased the bulk pack for personal and family use. Mr. Lewis and his family had not yet opened the 12-pack prior to receiving notice that the Wipes were subject to recall.

182.    On or about October 14, 2020, Mr. Lewis received an email from Amazon notifying him of a "potential safety issue" related to his purchase of the Wipes. The email notification stated that "Cottonelle has informed us that the product might contain bacterium, Pluralibacter gergoviae, which was detected during product testing." It also provided a link to Cottonelle's recall website.

183.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

184.    After receipt of the Recall Notice, Mr. Lewis and his family decided they would not be using the now useless (and, worse, potentially dangerous) Wipes.

185.    Mr. Lewis would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Mr. Lewis would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself and his family.

(16)    Plaintiff Mitchell Craven

186.    On August 9, 2020, Plaintiff Mitchell Craven purchased a pack of Cottonelle Flushable Wipes from Sam's Club, for approximately $13.94 plus tax.

187.    Mr. Craven purchased the bulk pack for personal use due to the nationwide toilet paper shortage caused by the Covid-19 pandemic. Mr. Craven used some of the pack prior to receiving notice that the Wipes were subject to recall.

188.    On or about October 15, 2020, Mr. Craven received a letter from Sam's Club notifying him of a "possible bacterial contamination" related to his purchase of the Wipes. The notification stated that "Kimberly-Clark has initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." It also provided a link to Cottonelle's recall website.

189.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

190.    After receipt of the Recall Notice, Mr. Craven stopped using the now useless (and, worse, potentially dangerous) Wipes.

191.    Mr. Craven would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Mr. Craven would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm.

(17)    Plaintiff Daniel Kaplan

192.    Between February and October 2020, Plaintiff Daniel Kaplan purchased two boxes of Cottonelle Flushable Wipes from BJ's Wholesale Club, for the price of $15.99 each, plus tax.

193.    Mr. Kaplan purchased the bulk packs for personal and family use. Mr. Kaplan and his family used the majority of their purchases prior to receiving notice that the Wipes were subject to recall.

194.    On or about October 12, 2020, Mr. Kaplan received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of Pluralibacter gergoviae bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark

recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

195.    The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

196.    Mr. Kaplan had experienced a rash while using the Cottonelle wipes and had been trying to treat the infection with over-the-counter creams. After receipt of the Recall Notice, Mr. Kaplan and his family stopped using the now useless (and, worse, potentially dangerous) Wipes.

197.    Mr. Kaplan also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes.

198.    Mr. Kaplan would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Mr. Kaplan would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself and his family.

(18)    Plaintiff Stephen Simpson

199.    On or about July 29, 2020, Plaintiff Stephen Simpson purchased a 10-pack of Cottonelle Flushable Wipes from Costco in New Mexico for $17.99 plus tax.

200.    Mr. Simpson purchased the bulk pack for personal use from Costco. Mr. Simpson used some of the 10-pack before receiving notice that the Wipes were subject to recall.

201.     On or about October 13, 2020, Mr. Simpson received an email from Costco with a link to a Recall Notice from Kimberly-Clark, which alerted him that the Cottonelle Flushable Wipe he purchased had been recalled "due to the discovery of possible microbial activity on the wipes." The notice was vague and did not provide any information regarding potential risks of injury.

202.     After receiving the Recall Notice, Mr. Simpson stopped using the now useless (and, worse, potentially dangerous) Wipes.

203.     Mr. Simpson attempted to call Kimberly-Clark's customer service line multiple times to no avail; he also visited Cottonelle's website to confirm the wipes he purchased were subject to the recall and to attempt to obtain a refund.

204.     After inputting his information into the Contact Us form on the website, Mr. Simpson later received a prepaid Visa card issued from MetaBank in the mail. After reviewing MetaBank's data sharing practices and the strict terms and conditions attached to use of the card, Mr. Simpson declined to use the card and contacted MetaBank representative to cancel it.

205.     Mr. Simpson would not have purchased the Wipes had he known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect bacterial contamination of its products. Further, Mr. Simpson would not have purchased the Wipes had he known that they were not safe and suitable for personal use, or they posed a risk of harm to himself.

(19)    <u>Plaintiff Rosetta Turner</u>

206.     Between February and October, 2020, Plaintiff Rosetta Turner purchased two boxes of Cottonelle Flushable Wipes from BJ's Wholesale Club, for the price of $15.99, plus tax.

207.    Ms. Turner purchased the bulk packs for personal and family use. Ms. Turner and her family used the majority of their purchases prior to receiving notice that the Wipes were subject to recall.

208.    On or about October 12, 2020, Ms. Turner received a letter from BJ's Wholesale stating that the Wipes were subject to a recall: "Kimberly-Clark is voluntarily recalling Cottonelle® Flushable Wipes due to the presence of Pluralibacter gergoviae bacterium, which is a cause of infection in humans. The recall only impacts specific lot codes on products distributed between February 14, 2020 and October 8, 2020. Out of an abundance of caution, Kimberly-Clark recommends that members discontinue the use of the product immediately." The letter instructed: "Please do not return the product to BJ's."

209.    The letter further stated that: "Our records indicate that you may have purchased the recalled Cottonelle® Flushable Wipes" and provided a list of lot numbers subject to recall along with a link to Cottonelle's recall website. The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

210.    After receipt of the Recall Notice, Ms. Turner and her family stopped using the now useless (and, worse, potentially dangerous) Wipes. Ms. Turner also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

211.    Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Turner was unable to submit refund requests for all her purchases or speak to a Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant volume of customer inquiries.

212.     Ms. Turner would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Turner would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(20)     Plaintiff Donna Styx

213.     On September 18, 2020, Plaintiff Donna Styx purchased a box of Cottonelle Flushable Wipes from Sam's Club, for the price of $13.94, plus tax.

214.     Ms. Styx purchased the bulk packs for personal and family use.

215.     On or about October 15, 2020, Ms. Styx received a letter from Sam's Club notifying her of a "possible bacterial contamination" related to her purchase of the Wipes. The letter stated that "Kimberly-Clark initiated a Recall of their Cottonelle Flushable Wipes with various Lot Numbers." They also provided a link to Cottonelle's recall website and a phone number to call Kimberly-Clark's Consumer Service team.

216.     The letter stated that at a minimum Ms. Styx's purchases from Sam's Club were impacted by the Recall. The notices were otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

217.     After receipt of the Recall Notice, Ms. Styx and her family decided against using the now useless (and, worse, potentially dangerous) Wipes. Ms. Styx also visited the recall website and attempted to contact Cottonelle to seek more information regarding the product recall, the potential risks of injury associated with the Wipes, and the possibility of obtaining a refund of the purchase price she paid for them.

218.     Unfortunately, and despite following the instruction provided on the Cottonelle website, Ms. Styx was unable to submit refund requests for all her purchases or speak to a

Cottonelle representative or obtain any additional information because the Cottonelle customer response team was wholly unequipped to handle the significant volume of customer inquiries.

219.    Ms. Styx would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Styx would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(21)    Plaintiff Jamie Chipman

220.    On several occasions in 2020, Plaintiff Jamie Chipman purchased an 8-pack of Cottonelle Flushable Wipes from Amazon. On February 28, 2020, she purchased the Wipes for $12.32 plus tax, on March 28, 2020, she purchased the Wipes for $12.32 plus tax, on April 21, 2020, she purchased the Wipes for $12.15 plus tax, on June 23, 2020, she purchased the Wipes for $11.75 plus tax, on July 22, 2020 she purchased the Wipes for $11.75 plus tax, and on August 22, 2020, she purchased the Wipes for $11.79 plus tax.

221.    Ms. Chipman purchased the Wipes packs for personal and family use. Ms. Chipman and her family used many of the 8-packs prior to receiving notice that the Wipes were subject to recall.

222.    On or about October 9, 2020, Ms. Chipman received an email from Amazon notifying her of a "potential safety issue" related to her purchase of the Wipes. The email notification stated that "Cottonelle has informed us that the product might contain bacterium, Pluralibacter gergoviae, which was detected during product testing." It also provided a link to Cottonelle's recall website.

223.    The notice was otherwise vague and did not provide any information regarding the ability to obtain a refund or potential risks of injury.

224.    After receipt of the Recall Notice, Ms. Chipman and her family stopped using the now useless (and, worse, potentially dangerous) Wipes.

225.    Ms. Chipman would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measures sufficient to prevent and detect contamination of its products. Further, Ms. Chipman would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

(22)    <u>Plaintiff Dawn Rothfeld</u>

226.    On a continuous basis from February 2020 through and including October 2020, Ms. Rothfeld purchased the Wipes from Costco in Oceanside, New York for personal and family use. During this time, Ms. Rothfeld used the Wipes regularly at home, at work, and while out of her house.

227.    On October 13, 2020, Ms. Rothfeld received a recall notice from Costco, stating that the Wipes she purchased were subject to a recall due to contamination.

228.    Ms. Rothfeld checked the lot numbers on the Wipes in possession using the Kimberly-Clark recall website, and confirmed her lot number, BI020605x, was affected by the recall.

229.    After receipt of the Recall Notice, Ms. Rothfeld and her family stopped using the now useless (and, worse, potentially dangerous) Wipes.

230.    Ms. Rothfeld would not have purchased the Wipes had she known that Kimberly-Clark did not implement safety and quality control measure sufficient to prevent and detect contamination of its products. Further, Ms. Rothfeld would not have purchased the Wipes had she known that they were not safe and suitable for personal use, or they posed a risk of harm to herself and her family.

## CLASS ACTION ALLEGATIONS

231. <u>Description of the Classes</u>: Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and/or (c)(4), as applicable, Plaintiffs seek certification of the following class and subclasses:

(a) The Nationwide Class:

All persons who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(b) The Arizona Subclass:

All Arizona residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020 that were subject to recall.

(c) The California Subclass:

All California residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(d) The Connecticut Subclass:

All Connecticut residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020 and September 14, 2020 that were subject to recall.

(e) The Florida Subclass:

All Florida residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(f) The Illinois Subclass:

All Illinois residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(g) The Indiana Subclass:

All Indiana residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(h) The Maine Subclass:

All Maine residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(i) The Massachusetts Subclass:

All Massachusetts residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(j) The Mississippi Subclass:

All Mississippi residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(k) The Missouri Subclass:

All Missouri residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(l) The New Jersey Subclass:

All New Jersey residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(m) The New Mexico Subclass:

All New Mexico residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(n) The New York Subclass:

All New York residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(o) The North Carolina Subclass:

All North Carolina residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(p) The South Carolina Subclass:

All South Carolina residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(q) The Texas Subclass:

> All Texas residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

(r) The Washington Subclass:

> All Washington residents who purchased Cottonelle® Flushable Wipes and/or Cottonelle® GentlePlus Flushable Wipes manufactured between February 7, 2020, and September 14, 2020, that were subject to recall.

232. Excluded from the classes are Kimberly-Clark's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

233. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and members of the class and subclasses, and those questions substantially predominate:

      (a) Whether Kimberly-Clark made and breached implied warranties of fitness and merchantability with respect to the Wipes;

      (b) Whether Kimberly-Clark acted negligently with respect to its manufacture, storage, and/or distribution of the Wipes;

      (c) Whether Kimberly-Clark negligently misrepresented that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

      (d) Whether Kimberly-Clark fraudulently failed to disclose facts pertaining to the Wipe's safety, sanitation, and/or suitability for their intended use;

(e) Whether Kimberly-Clark's misrepresentations and/or omissions pertaining to whether the Wipes were safe, sanitary, and otherwise suitable for their intended use were material;

(f) Whether Kimberly-Clark was unjustly enriched by the conduct and practices described herein;

(g) Whether equity and good conscience require that Kimberly-Clark make restitution to the Plaintiffs and the class members;

(h) Whether Kimberly-Clark acted deceptively, unfairly, and/or unlawfully, or otherwise violated applicable state consumer protection statutes;

(i) Whether Plaintiffs and the class members are entitled to recover actual damages from Kimberly-Clark;

(j) Whether Plaintiffs and the class members are entitled to injunctive relief; and

(k) Whether Kimberly-Clark acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiffs and the class members are entitled to an award of punitive damages.

234. Numerosity: The proposed classes are so numerous that individual joinder of all members is impracticable.

235. All members of the proposed classes are ascertainable by objective criteria, including from the records of Kimberly-Clark and its retail partners, which are sufficient to identify the members of the classes, and include contact information which can be used to provide notice to the class members.

236. Typicality: Plaintiffs' claims are typical of the claims of the members of the proposed classes. Plaintiffs and all members of the classes have been similarly affected by the actions of Kimberly-Clark.

237. <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of members of the classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

238. <u>Superiority of Class Action</u>: Plaintiffs and the members of the classes suffered, and will continue to suffer, harm by Kimberly-Clark's conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Kimberly-Clark's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

## COUNT 1
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)

239. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

240. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

241. Kimberly-Clark is a "merchant" with respect to wipes, tissues, toilet paper, and other goods of the same kind as the Cottonelle Wipes.

242. Kimberly-Clark, as the designer, manufacturer, marketer, distributor, and/or seller of the Cottonelle Wipes, impliedly warranted that the Wipes were of merchantable quality and thus, at a minimum:

> (a) were of sufficient quality to pass without objection in the trade or industry;
>
> (b) were of fair average quality within Kimberly-Clark's description of them;
>
> (c) were fit for the ordinary purposes for which they are used;
>
> (d) ran of even kind, quality, and quantity within each unit and among all units involved; were adequately contained, packaged, and labeled;
>
> (e) and/or conformed to the promises or affirmations of fact made on their packaging.

243. Kimberly-Clark breached the implied warranty of merchantability by, without limitation, selling defective Cottonelle Wipes that: were contaminated with dangerous bacteria, and thus were of insufficient quality to pass without objection in the trade or industry; were unsuitable for their ordinary purposes; were not of even kind or quality compared to non-contaminated Wipes; and which failed to conform to the promises or affirmations of fact made on their packaging.

244. Kimberly-Clark's breaches of the implied warranty of merchantability were the direct, producing, substantial, and proximate cause of the personal and economic injuries sustained by Plaintiffs and the class and subclass members detailed herein, including damages equal to the total purchase price of these unfit products, or the difference in value between the Wipes as warranted and the Wipes as actually sold and/or accepted, and consequential and incidental damages in an amount to be proven at trial.

## COUNT 2
## BREACH OF EXPRESS WARRANTY
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

245. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

246. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

247. Kimberly-Clark is a "seller" of the Cottonelle Wipes, as defined under § 2-103(1)(d) of the Uniform Commercial Code ("UCC") and under applicable common law.

248. Plaintiffs are "buyers" of the Cottonelle Wipes as defined under § 2-103(1)(A) of the UCC and under applicable common law.

249. Kimberly-Clark conveyed descriptions, affirmations of fact, and/or promises to Plaintiffs with respect to the Cottonelle Wipes, including that:

(a) the Wipes were of sufficient quality to pass without objection in the trade or industry;

(b) the Wipes will consistently meet consumer's needs;

(c) the Wipes will "perform as intended";

(d) the Wipes are "safe for their intended use";

(e) the Wipes will reach consumers in a "safe" condition;

(f) the Wipes are "sanitary";

(g) the Wipes utilize "CleaningRipples Texture and the cleansing power of water to deliver long-lasting freshness";

(h) the Wipes are "gentle and effective for a truly refreshing clean";

(i) the Wipes "deliver a gentle clean for sensitive skin";

(j) the Wipes deliver a "refreshing clean";

(k) the Wipes "offer a large, dual layer wipe to clean better than when using dry toilet paper alone"; and

(l) other descriptions, affirmations of fact, and/or promises alleged herein.

250. Kimberly-Clark's descriptions, affirmations of fact and/or promises relating to the Cottonelle Wipes formed the basis of the bargain between Kimberly-Clark and Plaintiffs and the class and subclass members, giving rise to express warranties that the Wipes would conform to such descriptions, affirmations of fact, and/or promises.

251. Kimberly-Clark breached the foregoing express warranties by selling Cottonelle Wipes to Plaintiffs and the class and subclass members that were contaminated with harmful bacteria and subject to recall, and which—contrary to Kimberly-Clark's descriptions, affirmations of fact, and/or promises about the Wipes—were not "sanitary," "safe," "gentle," or "effective"; did not "perform as intended"; did not meet Plaintiffs' needs; did not deliver "long-lasting freshness," a "truly refreshing clean," a "gentle clean for sensitive skin," or "clean better than . . . dry toilet paper alone"; and/or did not otherwise conform to Kimberly-Clark's express warranties described herein.

252. Kimberly-Clark's breaches of the foregoing express warranties were the direct, producing, substantial, and proximate cause of the personal and economic injuries sustained by Plaintiffs and the class and subclass members as detailed herein, including damages equal to the total purchase price of these unfit products, or the difference in value between the Wipes as warranted and the Wipes as actually sold and/or accepted, and consequential and incidental damages in an amount to be proven at trial.

## COUNT 3
## STRICT PRODUCTS LIABILITY
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

253. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

254. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

255. At all times relevant to the claims asserted in this Consolidated Complaint, Kimberly-Clark was engaged in the business of designing, manufacturing, maintaining, selling, distributing, and/or supplying the Cottonelle Wipes.

256. Kimberly-Clark placed the Cottonelle Wipes in the stream of commerce by distributing them to various retailers throughout the United States, including, where the Cottonelle Wipes were ultimately purchased by, or for use by, Plaintiffs and the class and subclass members.

257. The Cottonelle Wipes purchased by Plaintiffs and the class and subclass members were in a defective condition that rendered them unreasonably dangerous at the time Kimberly-Clark designed, manufactured, maintained, sold, distributed, and/or supplied them—namely, because they were contaminated with the harmful bacterium *Pluralibacter gergoviae*—because the Wipes were *defectively manufactured*, in that the finished Wipes deviated in terms of its construction or quality from the specifications or planned output in a manner that caused, permitted, or failed to detect the contamination of the Wipes by a dangerous bacterial contamination, or that otherwise rendered them unreasonably dangerous.

258. Kimberly-Clark expected the Cottonelle Wipes to reach Plaintiffs without substantial change to the condition in which it sold or otherwise parted with possession of them.

259. The Cottonelle Wipes did, in fact, reach Plaintiffs without substantial change to the condition in which Kimberly-Clark sold or otherwise parted with possession of them.

260. Kimberly-Clark's defective design and/or manufacture of the Wipes was the direct, producing, substantial, and proximate cause of the losses sustained by Plaintiffs, as detailed herein.

261. Kimberly-Clark had actual, subjective awareness of the risks of harm the foregoing conduct posed to the rights, safety, and welfare of Plaintiffs and the class and subclass members, but consciously disregarded such risks, and otherwise acted with gross neglect, malice, and/or recklessness, such that Plaintiffs and the class and subclass members are entitled to an award of punitive and exemplary damages in an amount sufficient to punish and deter like conduct.

## COUNT 4
## NEGLIGENCE
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

262. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

263. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

264. Kimberly-Clark owed duties of care to Plaintiffs and the class members to safely manufacture, distribute and store the Wipes, which includes obligations to implement and undertake reasonable measures to ensure that the Wipes distributed to consumers like Plaintiffs are free from harmful contaminants, and to conduct reasonable investigation in response to consumer complaints that suggest the Wipes might be contaminated.

265. In addition, after initiating the Recall and voluntarily undertaking to communicate information to Plaintiffs about the affected Wipes and the bacterial contaminants detected in them, Kimberly-Clark owed duties of care to Plaintiffs to supply them reasonably clear, competent,

accurate, and complete information regarding the health risks associated with the bacterial contaminant found in its Wipes.

266. The foregoing duties arise by law based on, without limitation, the following factors:

(a) The high degree of foreseeability that users of the Wipes will suffer injury of the kind described herein;

(b) The high probability that users of the Wipes, like Plaintiffs, will suffer the kind of injury described herein;

(c) The existence of public health and safety regulations prescribing such duties of care;

(d) The slightness of the burden such a duty would impose on entities like Kimberly-Clark, compared to assigning responsibility for such harm avoidance to Plaintiffs, in light of Kimberly-Clark's exclusive access to the product for inspecting and testing prior to distribution, and in light of its superior knowledge regarding product manufacturing, storage, and distribution practices;

(e) Kimberly-Clark's voluntary undertaking to supply Plaintiffs with information and guidance regarding the health risks posed by *Pluralibacter gergoviae*; and

(f) public policy considerations.

267. Kimberly-Clark breached the foregoing duties including, without limitation, by:

(a) negligently failing to implement and observe adequate safeguards to prevent product contamination;

(b) negligently failing to implement and observe adequate methods for detecting the presence of bacterial contamination prior to mass distribution of its Wipes;

(c) negligently failing to conduct reasonable investigation or testing of its Wipes after receiving consumer complaints indicating a reasonable likelihood that the Wipes were contaminated or were otherwise unsafe;

(d) negligently and falsely downplaying the medical risks associated with *Pluralibacter gergoviae* after voluntarily undertaking to supply information and guidance to Plaintiffs about such risks;

(e) negligently failing to adequately staff or equip the Cottonelle customer service team in response to a foreseeable volume of inquiries by consumers affected by the Recall; and

(f) committing other negligent acts as described herein.

268.  As a direct and proximate cause of the foregoing conduct, Plaintiffs have suffered damages as described herein, in an amount to be proven at trial.

269.  In committing the foregoing breaches, Kimberly-Clark acted grossly negligent and/or recklessly, such that an award of punitive damages should issue against Kimberly-Clark in an amount sufficient to punish and deter like conduct.

## COUNT 5
## FRAUD BY SILENCE OR OMISSION
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

270.  Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

271.  Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

272.  Kimberly-Clark had a duty to disclose material facts to Plaintiffs regarding bacterial contamination in the Wipes.

273. Kimberly-Clark's duty to disclose arises by law, including without limitation, by virtue of its superior and unique knowledge of the facts and/or its decision to speak.

274. Kimberly-Clark's duty to disclose also arises by virtue of its own culpability in creating Plaintiffs' mistaken belief that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

275. Kimberly-Clark knew or had reason to know that the undisclosed information about the safety and sanitary condition of the Wipes were material to Plaintiffs' decision to purchase them.

276. Kimberly-Clark intended that Plaintiffs rely on its silence as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

277. Plaintiffs relied on Kimberly-Clark silence as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

278. Plaintiffs relied on Kimberly-Clark silence as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use. Kimberly-Clark's omissions were of such a nature that no reasonable consumer would have purchased the Wipes had they known the Wipes were potentially contaminated and subject to recall.

279. Plaintiffs have sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial.

280. Kimberly-Clark acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## COUNT 6
## NEGLIGENT MISREPRESENTATION
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

281. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

282. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

283. Kimberly-Clark supplied false information to Plaintiffs for their guidance and benefit in ascertaining the nature, quality, and properties of the Wipes.

284. Kimberly-Clark further supplied false information to Plaintiffs for their guidance and benefit informing them about the relative risks of exposure to Wipes contaminated with *Pluralibacter gergoviae.*

285. Kimberly-Clark also had a duty to disclose material facts to Plaintiffs about the nature, quality, risks, and conditions of the Wipes by virtue of its superior and unique knowledge of the facts and its own culpability in creating Plaintiffs' mistaken belief that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

286. Kimberly-Clark breached the foregoing duties, including, without limitation, by:

(a) misrepresenting to Plaintiffs that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

(b) supplying Plaintiffs misleading information about the risks associated with exposure to Wipes contaminated with *Pluralibacter gergoviae*; and/or

(c) omitting material information about nature, quality, risks, and conditions of the Wipes, including the risks that they were contaminated.

287. Kimberly-Clark's misrepresentations and omissions were of such a nature that no reasonable consumer would have purchased the Wipes had they known that the Wipes were potentially contaminated and subject to recall.

288. Plaintiffs are within the class of persons whom Kimberly-Clark intended to guide when it supplied information regarding safety, sanitation, and suitability of the Wipes for their intended use or, alternatively, are within the class of persons to whom Kimberly-Clark knew such information would be communicated by another.

289. Plaintiffs sustained damages when they purchased the Wipes under the belief that they were safe, sanitary and suitable for personal use, and otherwise conformed to the representations made by Kimberly-Clark.

290. Kimberly-Clark acted intentionally, maliciously, grossly negligent, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

**COUNT 7**
**UNJUST ENRICHMENT**
**(On Behalf of all Plaintiffs and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses)**

291. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

292. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiffs and their respective Subclasses.

293. Plaintiffs conferred a benefit on Kimberly-Clark at Plaintiffs' expense when they paid Kimberly-Clark for Wipes that were potentially contaminated with harmful bacteria, subject to recall, and therefore worthless.

294. Kimberly-Clark was unjustly enriched by the sale of the recalled Wipes.

295. Kimberly-Clark nonetheless accepted, appreciated, retained such benefit, with knowledge that it rightly belonged to Plaintiffs. Kimberly-Clark could have provided automatic refunds but instead opted to retain its ill-gotten gains.

296. Kimberly-Clark's retention of the consideration paid for the contaminated Wipes is inequitable under the circumstances because, among other reasons, Kimberly-Clark acted unfairly, deceptively, unjustly and/or unlawfully when it sold products that were subject to recall.

297. Equity and good conscience require that Kimberly-Clark make restitution for the benefits it obtained unfairly, deceptively, unjustly and/or unlawfully at Plaintiffs' expense. Plaintiffs are therefore entitled to disgorgement and/or restitution of all wrongful gains obtained by Kimberly-Clark.

### COUNT 8
### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
#### (On Behalf of Plaintiff Rader and the Arizona Subclass)

298. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

299. Plaintiff Ann Rader brings this claim on behalf of herself and the Arizona Subclass.

300. The Arizona Consumer Fraud Act prohibits the use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. Ariz. Rev. Stat. Ann. § 44-1522.

301. Kimberly-Clark's Wipes constitute "merchandise" under Ariz. Rev. Stat. Ann. § 44-1521(5).

302. Kimberly-Clark is a "person" as defined by Ariz. Rev. Stat. Ann. § 6.

303. Kimberly-Clark engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Arizona Consumer Fraud Act, including:

(a) selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria;

(b) omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use;

(c) misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

(d) failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes;

(e) failing to timely recall Wipes that were known or suspected to be contaminated;

(f) failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated;

(g) failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and

(h) failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

304. Kimberly-Clark intended that Plaintiff rely on such acts and omissions as grounds to believe that the Wipes were safe, sanitary, and otherwise suitable for their intended use.

305. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Rader and the members of the Arizona Subclass were injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use.

306. Plaintiff Raider and each of the members of the Arizona Subclass seek all monetary and non-monetary relief allowed by law, including monetary damages equal to their actual damages, attorneys' fees and costs, and any other just and proper relief.

307. Kimberly-Clark had actual, subjective awareness of the risks of harm the foregoing conduct posed to the rights, safety, and welfare of Plaintiff and the class and subclass members, but consciously disregarded such risks, and otherwise acted with wanton and/or reckless conduct, such that Plaintiff and the Arizona subclass members are entitled to an award of punitive and exemplary damages in an amount sufficient to punish and deter like conduct.

### COUNT 9
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
**(On Behalf of Plaintiffs Armstrong, Nadeau, K. Ray, and the California Subclass)**

308. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

309. Plaintiffs Melissa Armstrong, Roland Nadeau, and Karyn Ray bring this claim on behalf of themselves and the California Subclass.

310. Kimberly-Clark is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

311. Kimberly-Clark violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

312. Kimberly-Clark's unlawful, unfair, and deceptive and practices include:

(a) selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria;

(b) omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use;

(c) misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

(d) failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes;

(e) failing to timely recall Wipes that were known or suspected to be contaminated;

(f) failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated;

(g) failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and

(h) failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

313. Kimberly-Clark's failure to detect and prevent the spread of hazardous materials and misrepresentations and omissions relating to the safety of its products are contrary to legislatively-declared public policy that seeks to protect consumers' safety Kimberly-Clark has engaged in "unlawful" business practices by violating multiple laws, including California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq*., California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., and California common law.

314. Kimberly-Clark's unlawful conduct described herein resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Kimberly-Clark's unlawful conduct, consumers could not have reasonably avoided the harms that Kimberly-Clark caused. Kimberly-Clark's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

315. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiffs Armstrong, Nadeau, Ray, and the members of the

California Subclass were injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

316. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded the rights of Plaintiffs Armstrong, Nadeau, Ray, and the members of the California Subclass. Plaintiffs and the California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Kimberly-Clark's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT 10
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### (On Behalf of Plaintiffs Armstrong, Nadeau, K. Ray, and the California Subclass)

317. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

318. Plaintiffs Melissa Armstrong, Roland Nadeau, Karyn Ray bring this claim on behalf of themselves and the California Subclass.

319. California's Consumers Legal Remedies Act ("CLRA") sets forth a list of prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

320. The California legislature's intent in promulgating the CLRA is reflected in Section 1760, which mandates that its terms are to be "[c]onstrued liberally and applied to promote its

underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

321. Kimberly-Clark's Wipes constitute "goods" under Cal. Civ. Code § 1761(a).

322. Plaintiffs Armstrong, Nadeau, Ray, and the members of the California Subclass are each a "consumer" under Cal. Civ. Code § 1761(d).

323. Plaintiffs Armstrong, Nadeau, Ray, and the members of the California Subclass's purchase of the Wipes constitutes a "transaction" Under Cal. Civ. Code § 1761(e).

324. Kimberly-Clark has violated, and continues to violate, Civ. Code § 1770, including by:

(a) representing that the Wipes have characteristics, uses, and/or benefits that they do not have;

(b) advertising the Wipes as safe, hygienic, clean, and/or refreshing, with the intent not to sell them as advertised; and/or

(c) representing that the Wipes have been supplied in accordance with previous representation when they have not.

325. Plaintiffs Armstrong, Nadeau, Ray, and the members of the California Subclass have suffered harm by the conduct described herein and will continue to suffer harm unless such conduct is enjoined by this Court.

326. As Kimberly-Clark did not comply with Plaintiffs' demand letter pursuant to California Civil Code § 1782, Plaintiffs also seek all monetary and non-monetary relief allowed under the Consumers Legal Remedies Act on behalf of themselves and the California Subclass members, including actual damages, injunctive relief, restitution, punitive damages, and any other relief the court deems proper.

## COUNT 11
## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (On Behalf of Plaintiff Zambelli and the Connecticut Subclass)

327. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

328. Plaintiff Karen Zambelli brings this claim on behalf of herself and the Connecticut Subclass.

329. The Connecticut Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

330. Kimberly-Clark used or employed unfair or deceptive acts or practices that violated the Connecticut Unfair Trade Practices Act in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

331. As a direct and proximate result of the use or employment of the foregoing unlawful methods, acts, and/or practices, Ms. Zambelli and the members of the Connecticut Subclass have suffered an ascertainable loss of money and/or property, including amounts paid for useless and potentially dangerous Wipes, or the difference in value between the Wipes as warranted and the

Wipes as actually sold. as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

332. Ms. Zambelli and the members of the Connecticut Subclass have suffered harm by the conduct described herein and will continue to suffer harm unless such conduct is enjoined by this Court.

333. Pursuant to Conn. Gen. Stat. Ann. § 42-11g(d), Ms. Zambelli and the members the Connecticut Subclass are entitled to injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein, along with their reasonable attorney's fees and costs.

334. Ms. Zambelli and the members the Connecticut Subclass seek all monetary and non-monetary relief allowed by law, including actual damages, costs, and reasonable attorneys' fees, and such other legal or equitable relief that the Court may deem appropriate.

335. Kimberly-Clark committed the foregoing violations of Conn. Gen. Stat. § 42-110b(a) willfully and/or knowingly, such that Ms. Zambelli and the members of the Connecticut Subclass are entitled to punitive damages in accordance with Conn. Gen. Stat. § 42-110g(a).

336. A copy of this Amended Complaint is being mailed to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection. Conn. Gen. Stat. § 42-110g(c).

**COUNT 12**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**(On Behalf of Plaintiff Rauch, Levit, and the Florida Subclass)**

337. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

338. Plaintiffs Barbara Rauch and Mark Levit bring this claim on behalf of themselves and the Florida Subclass.

339. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "unfair or deceptive practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1).

340. At all relevant times, Plaintiffs Barbara Rauch, Mark Levit, and the members of the Florida Subclass were "consumers" within the meaning of FDUTPA. Fla. Stat. Ann. § 501.203(7).

341. At all relevant times, Kimberly-Clark was engaged in "trade or commerce" within the meaning of FDUTPA. Fla. Stat. Ann. § 501.203(8).

342. Kimberly-Clark committed unfair or deceptive acts or practices involving trade or commerce in violation of FDUTPA in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

343. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiffs Rauch, Levit, and the members of the Florida Subclass were injured and lost money or property, including the amounts they paid for Wipes which were

unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

344. Plaintiffs Rauch, Levit, and the members of the Florida Subclass will continue to suffer harm unless such conduct is enjoined by this Court. Thus, pursuant to Fla. Stat. Ann. § 501.211(1), Plaintiffs Rauch, Levit, and the members the Florida Subclass are entitled to declaratory and injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein, along with their reasonable attorney's fees and costs.

345. Plaintiffs Rauch, Levit, and each of the members of the Florida Subclass also seek all monetary relief allowed by law, including monetary damages equal to their actual damages, plus attorney's fees and court costs under Fla. Stat. Ann. § 501.211(2).

### COUNT 13
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
### (On Behalf of Plaintiff Conley and the Illinois Subclass)

346. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

347. Plaintiff Courtney Conley brings this claim on behalf of herself and the Illinois Subclass.

348. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices" in the conduct of any trade or commerce. 815 Ill. Comp. Stat. Ann. § 505/2.

349. At all relevant times, Plaintiff Conley and the members of the Illinois Subclass were "persons" within the meaning of 815 Ill. Comp. Stat. Ann. § 505/1(c).

350. At all relevant times, Kimberly-Clark was engaged in "trade or commerce" within the meaning of 815 Ill. Comp. Stat. Ann. § 505/1(f).

351. Kimberly-Clark committed unfair or deceptive acts or practices involving trade or commerce in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

352. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Conley and the members of the Illinois Subclass was injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

353. Plaintiff Conley and the members of the Illinois Subclass will continue to suffer harm unless such conduct is enjoined by this Court. Under 815 Ill. Comp. Stat. Ann. 505/10a,

Plaintiff Conley and the members of the Illinois Subclass are entitled to declaratory and injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein.

354. Plaintiff Conley and each of the members of the Illinois Subclass also seek all monetary relief allowed by law, including monetary damages equal to their actual damages, plus attorney's fees, court costs, and any other relief which the court deems proper under 815 Ill. Comp. Stat. Ann. § 505/10a.

355. Kimberly-Clark committed the foregoing violations of 815 Ill. Com. Stat. Ann. § 505/2 willfully and/or knowingly, such that Plaintiff Conley and the members of the Illinois Subclass are entitled to punitive damages under 815 Ill. Comp. Stat. Ann. § 505/10a.

## COUNT 14
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
#### (On Behalf of Plaintiff J. Ray and the Indiana Subclass)

356. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

357. Plaintiff Jannet Ray brings this claim on behalf of herself and the Indiana Subclass.

358. Indiana's Deceptive Consumer Sales Act prohibits a supplier from committing an "unfair, abuse, or deceptive act, omissions, or practice in connection with a consumer transaction." Ind. Code § 25-5.05-3.

359. Plaintiff Ray and the members of the Indiana Subclass's purchase of the Wipes each constitutes a "consumer transaction" as defined by Ind. Code § 24-5-0.5-2(a)(1).

360. Kimberly-Clark at all relevant times was a "person" as defined by Ind. Code § 24-5.05-2(a)(2).

361. Kimberly-Clark at all relevant times was a "supplier" of the Wipes as defined by Ind. Code § 24-5-o.5-2(a)(3).

362. Kimberly-Clark engaged in unlawful, unfair, and deceptive business acts and practices in violation of the Indiana Deceptive Consumer Sales Act in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

363. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Ray and the members of the Indiana Subclass was injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

364. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded the rights of Plaintiff Ray the members of the Indiana Subclass. Plaintiff and the Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of

$500.00 per violation, whichever is greater, attorneys' fees and costs, treble damages under Ind. Code § 24-5.05-4(a), and punitive damages.

<u>**COUNT 15**</u>
**VIOLATIONS OF MAINE'S UNFAIR TRADE PRACTICES ACT**
**(On Behalf of Plaintiff Gordan and the Maine Subclass)**

365. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

366. Plaintiff Linda Gordan brings this claim on behalf of herself and the Maine Subclass.

367. Maines's Unfair Trade Practices Act, 5 M.R.S. §§ 205 *et seq*. ("MUTPA") broadly prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207.

368. Ms. Gordan and the members of the Maine Subclass are "persons" within the meaning of 5 M.R.S. § 206(2).

369. Kimberly-Clark is engaged in "trade" or "commerce" with respect to the Wipes under 5 M.R.S. § 206(3).

370. Ms. Gordan and the members of the Maine Subclass purchased the Wipes primarily for personal, family or household purposes.

371. Kimberly-Clark used or employed unlawful methods, acts, and/or practices in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall

Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

372. As a result of the use or employment of the foregoing unlawful methods, acts, and/or practices, Ms. Gordan and the members of the Maine Subclass lost money and/or property, including amounts paid for useless and potentially dangerous Wipes.

373. Ms. Gordan and the members of the Maine Subclass have suffered harm by the conduct described herein and will continue to suffer harm unless such conduct is enjoined by this Court.

374. Pursuant to 5 M.R.S. § 213.1, Ms. Gordan and the members the Maine Subclass are entitled to injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein, along with their reasonable attorney's fees and costs.

375. Ms. Gordan and the members the Maine Subclass are entitled to actual damages and restitution, as Kimberly-Clark failed to make an acceptable offer of settlement within 30 days of service of Ms. Gordan's demand for relief pursuant to 5 M.R.S. § 213.1-A.

<u>**COUNT 16**</u>
**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**
**(On Behalf of Plaintiff Alexander and the Massachusetts Subclass)**

376. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

377. Plaintiff Tracey Alexander brings this claim on behalf of herself and the Massachusetts Subclass.

378. Under the Massachusetts Consumer Protection Act, "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws Ann. ch. 93A, § 2.

379. Kimberly-Clark engaged in unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act in connection with its manufacture, distribution, and sale of the contaminated Wipes, including selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

380. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Alexander and the members of the Massachusetts Subclass was injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold.

381. Plaintiff Alexander and the members of the Massachusetts Subclass have suffered harm by the conduct described herein and will continue to suffer harm unless such conduct is enjoined by this Court.

382. Under M.G.L.A. 93A § 9(1), Plaintiff Alexander and the members of the Massachusetts Subclass are entitled to declaratory and injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein.

383. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate the Massachusetts Consumer Protection Act, and recklessly disregarded the rights of Plaintiff Alexander and the members of the Massachusetts Subclass. Thus, Plaintiff Alexander and the members of the Massachusetts Subclass also seek all monetary relief allowed by law, including actual damages, double or treble damages, attorneys' fees and costs under M.G.L.A. 93A § 9, and punitive damages.

### COUNT 17
### VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT
#### (On Behalf of Plaintiff Lewis and the Mississippi Subclass)

384. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

385. Plaintiff Adrian Lewis brings this claim on behalf of himself and the Mississippi Subclass.

386. The Mississippi Consumer Protection Act prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1).

387. At all times relevant to this Consolidated Complaint, Kimberly-Clark was engaged in the trade or commerce of selling, marketing, and promoting Wipes for use by Mississippi consumers.

388. At all times relevant to this Consolidated Complaint, Plaintiff Lewis and each of the members of the Mississippi subclass purchased the Wipes primarily for personal, family, or household purposes under Miss. Code Ann. § 75-24-15.

389. Kimberly-Clark has violated the Consumer Protection Act, Miss. Code Ann. § 75-24-5, by engaging in unfair and deceptive practices in connection with its manufacture, distribution, and sale of the contaminated Wipes, by, among other things: selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

390. As a direct and proximate result of the foregoing conduct, Plaintiff. Lewis, and the members of the Mississippi Subclass suffered injury in fact and ascertainable loss of money, including the amounts paid for the useless and potentially dangerous Wipes, or the difference in value between the Wipes as warranted and the Wipes as actually sold. as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

391. Kimberly-Clark knowingly and willfully violated Miss. Code Ann. § 75-24-5 and their acts and practices alleged herein constitute unfair and deceptive trade practices as they are defined in said statute. Plaintiff Lewis and the members of the Mississippi Subclass seek all non-monetary and monetary relief allowed by law, including injunctive and/or declaratory relief, actual damages, attorney's fees and costs, and punitive damages.

## COUNT 18
### VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
#### (On Behalf of Plaintiff Craven and the Missouri Subclass)

392. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

393. Plaintiff Mitchell Craven brings this claim on behalf of himself and the Missouri Subclass.

394. The Missouri Merchandising Practices Act ("MMPA") was created to protect Missouri consumers from deceptive and unfair business practices.

395. The MMPA makes it unlawful to engage in any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat. § 407.020.1.

396. Kimberly-Clark is a "person" within the meaning of the MMPA, Mo. Rev. Stat. § 407.010(5).

397. The goods purchased from Kimberly-Clark are "merchandise" within the meaning of the MMPA, Mo. Rev. Stat. § 407.010(4).

398. At all relevant times, Plaintiff Craven and each of the members of the Missouri Subclass purchased the Wipes primarily for personal, family, or household purposes under V.A.M.S. § 407.025.

399. The transactions resulting in purchases of goods from Kimberly-Clark in Missouri are a "sale" within the meaning of the MMPA, Mo. Rev. Stat. § 407.010(6).

400. The herein mentioned unfair and deceptive acts or practices by Kimberly-Clark were conducted in "trade" or "commerce" as defined by Mo. Rev. Stat. § 407.010(7).

401. Kimberly-Clark engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the manufacture, distribution, and sale of the contaminated Wipes in violation of Mo. Rev. Stat. § 407.020, by, among other things: selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

402. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Craven and the members of the Missouri Subclass were injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

403. Plaintiff Craven and each of the members of the Missouri Subclass acted as a reasonable consumer would in light of all the circumstances.

404. Kimberly-Clark's unlawful methods, acts, or practices would cause a reasonable person to enter into the transaction resulting Plaintiff's and the Missouri Subclass's damages.

405. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate the MMPA, and recklessly disregarded the rights of Plaintiff Craven the members of the Missouri Subclass. Plaintiff and the Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive and/or declaratory relief, actual damages, consequential damages, statutory damages, punitive damages, and attorney's fees and costs.

**COUNT 19**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(On Behalf of Plaintiff Kaplan and the New Jersey Subclass)**

406. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

407. Plaintiff Daniel Kaplan brings this claim on behalf of himself and the New Jersey Subclass.

408. The New Jersey Consumer Fraud Act ("NJCFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that the others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N. J. Stat. Ann.§ 56:8-2.

409. Plaintiff Kaplan and each of the members of the New Jersey Subclass is a "person" for purposes of the New Jersey Consumer Fraud Act. N.J. Stat. Ann. § 56:8-1(d).

410. Kimberly-Clark is a "person" as defined by the New Jersey Consumer Fraud Act. N.J. Stat. Ann. § 56:8-1(d).

411. Kimberly-Clark's Wipes constitute "merchandise" under N.J. Stat. Ann. § 56:8-1(c).

412. Kimberly-Clark engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the manufacture, distribution, and sale of the contaminated Wipes in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., by, among other things: selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

413. The conduct of Kimberly-Clark as set forth above constitutes unlawful acts and practices prohibited by the New Jersey Consumer Fraud Act, including affirmative misconduct and knowing fraudulent acts by both commission and/or omission.

414. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Kaplan and the members of the New Jersey Subclass was injured and suffered an ascertainable loss of money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

415. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate the NJCFA, and recklessly disregarded the rights of Plaintiff Kaplan the members of the New Jersey Subclass. Plaintiff and the New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages, treble damages, injunctive relief, costs of suit and reasonable attorney fees under N.J.S.A. 56:8-19, and for such further relief as the Court deems just and proper.

## COUNT 20
### VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT
**(On Behalf of Plaintiff Simpson and the New Mexico Subclass)**

416. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

417. Plaintiff Stephen Simpson brings this claim on behalf of himself and the New Mexico Subclass.

418. The New Mexico Unfair Trade Practices Act, ("NMUPA"), N.M. Stat. Ann. § 57-12-1 *et seq.*, makes unlawful any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3.

419. Plaintiff Simpson, each of the members of the New Mexico Subclass, and Kimberly-Clark are or were "person[s]" under NMUPA. N.M. Stat. Ann. § 57-12-2(A).

420. Kimberly-Clarks actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2(C).

421. The NMUPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. § 57-12-

2(D).    Kimberly-Clark's acts and    omissions    described    herein    constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D).

422. Specifically, Kimberly-Clark has violated the NMUPA by, among other things: selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

423. In addition, Kimberly-Clarks actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), because it took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiff and each of the members of the New Mexico Subclass to a grossly unfair degree.

424. Kimberly-Clark's unfair or deceptive acts or practices were likely to and in fact did deceive reasonable consumers, including Plaintiff and each of the members of the New Mexico Subclass, about the true nature of the Wipes.

425. Kimberly-Clark intentionally and knowingly misrepresented material facts regarding the Wipes with an intent to mislead Plaintiff and the members of the New Mexico Subclass.

426. Kimberly-Clark knew or should have known that its conduct violated the NMUPA.

427. Plaintiff Simpson and each of the members of the New Mexico Subclass suffered ascertainable loss caused by Kimberly-Clark's misrepresentations and its concealment of and failure to disclose material information.

428. Kimberly-Clark's violations present a continuing risk to Plaintiff Simpson, each of the members of the New Mexico Subclass, and the general public. Kimberly-Clark's unlawful acts and practices complained of herein affect the public interest.

429. As a direct and proximate result of Kimberly-Clark's violations of the NMUPA, Plaintiff Simpson and each of the members of the New Mexico Subclass have suffered actual damage.

430. Because Kimberly-Clark's unconscionable, willful conduct caused actual harm to Plaintiff Simpson and the members of the New Mexico Subclass, each is entitled to recovery of actual damages, discretionary treble damages, punitive damages, reasonable attorney's fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

**COUNT 21**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349**
**(On Behalf of Plaintiffs Heinrich, Turner, Rothfeld and the New York Subclass)**

431. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

432. Plaintiffs Erik Heinrich, Rosetta Turner, and Dawn Rothfeld bring this claim on behalf of themselves and the New York Subclass.

433. New York General Business Law Section 349 prohibits the use of any "[d]eceptive acts or practices in the conduct of any business, trade, or commerce . . . ."

434. Kimberly-Clark's sale of the Wipes to Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass constitute the "conduct of any trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

435. Kimberly-Clark manufactured, designed, packaged, advertised, and sold the Wipes to Mr. Heinrich, Ms. Turner, and Ms. Rothfeld and the members of the New York Subclass in the normal course of its business.

436. As detailed herein, Kimberly-Clark employed deceptive acts or practices in connection with its marketing, advertising, labeling, and/or selling of the Wipes, including by selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

437. Kimberly-Clark's conduct with respect to the Wipes was consumer-oriented because it involved consumer products, imperiled consumer safety, and concerned deceptive marketing, labeling, and advertising directed to consumers in New York and throughout the country.

438. Kimberly-Clark's deceptive misrepresentations and omissions were material, and induced Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass to purchase or pay a premium for the Wipes which they otherwise would not have purchased or paid.

439. As a direct and proximate result of the foregoing conduct, Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass suffered injury in fact and

ascertainable loss of money, including the amounts paid for the useless and potentially dangerous Wipes.

440. Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and each of the members of the New York Subclass are entitled to monetary damages equal to the greater of their actual damages or fifty dollars, along with injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein, along with their reasonable attorneys' fees and costs.

441. Kimberly-Clark committed the foregoing violations of N.Y. Gen. Bus. Law § 349 willfully and/or knowingly, such that Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass are entitled to enhanced and punitive damages in accordance with N.Y. Gen. Bus. Law § 349(h).

## <u>COUNT 22</u>
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 350
**(On Behalf of Plaintiffs Heinrich, Turner, Rothfeld, and the New York Subclass)**

442. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

443. Plaintiffs Erik Heinrich, Rosetta Turner, and Dawn Rothfeld bring this claim on behalf of themselves and the New York Subclass.

444. New York General Business Law Section 350 prohibits the use of any "[f]alse advertising in the conduct of any business, trade or commerce . . . ."

445. Kimberly-Clark's sale of the Wipes to Mr. Heinrich, Ms. Turner, Ms. Rothfeld and the members of the New York Subclass constitute the "conduct of any trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

446. As detailed herein, Kimberly-Clark's conveyed false, deceptive, and/or misleading representations and omissions to Mr. Heinrich, Ms. Turner, and Ms. Rothfeld and the members of the New York Subclass about the safety and effectiveness of the Wipes.

447. Kimberly-Clark's false and/or misleading advertising, labeling, and other marketing constitutes "false advertising in the conduct of any business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

448. Kimberly-Clark's conduct with respect to the Wipes was consumer-oriented because it involved deceptive marketing, labeling, and advertising directed to consumers in New York and throughout the country.

449. Kimberly-Clark's deceptive misrepresentations and omissions were material, and induced Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass to purchase or pay a premium for the Wipes which they otherwise would not have purchased or paid.

450. As a direct and proximate result of the foregoing conduct, Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass suffered injury in fact and ascertainable loss of money, including the amounts paid for the useless and potentially dangerous Wipes.

451. Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and each of the members of the New York Subclass are entitled to monetary damages equal to the greater of their actual damages or five hundred dollars, along with injunctive relief restraining Kimberly-Clark's false advertising, along with their reasonable attorneys' fees and costs.

452. Kimberly-Clark committed the foregoing violations of N.Y. Gen. Bus. Law § 350 willfully and/or knowingly, such that Mr. Heinrich, Ms. Turner, Ms. Rothfeld, and the members of the New York Subclass are entitled to enhanced and punitive damages in accordance with N.Y. Gen. Bus. Law § § 350-e.1.

**COUNT 23**
**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE**
**PRACTICES ACT**
**(On Behalf of Plaintiff Styx and the North Carolina Subclass)**

453. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

454. Plaintiff Donna Styx brings this claim on behalf of herself and the North Carolina Subclass.

455. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 et seq. ("NCUDTPA"), prohibits a person from engaging in "unfair or deceptive acts or practices in or affecting commerce."

456. Kimberly-Clark was at all time relevant hereto, engaged in commerce within the meaning of the NCUDTPA.

457. Kimberly-Clark engaged in a course of commerce which constitutes unfair, deceptive, or misleading practices, and is therefore unlawful under N.C.G.S. §§ 75-1.1 et seq. of the North Carolina Unfair and Deceptive Trade Practices Act by, in connection with its marketing, advertising, labeling, and/or selling of the Wipes, including by selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased

Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

458. Kimberly-Clark willfully engaged in the above-mentioned deceptive acts or practices and engaged in an unwarranted refusal to fully resolve the matter which constitutes the basis of this suit.

459. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Styx and the members of the North Carolina Subclass was injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

460. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate NCUDTA, and recklessly disregarded the rights of Plaintiff Styx the members of the North Carolina Subclass. Plaintiff and the North Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages under N.C.G.S. § 75-16, attorneys' fees and costs under N.C.G.S. § 75-16.1.

### COUNT 24
### VIOLATIONS OF THE SOUTH CAROLINA
### UNFAIR TRADE PRACTICES ACT
### (On Behalf of Plaintiff Green and the South Carolina Subclass)

461. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

462. Plaintiff Sandra Green brings this claim on behalf of herself and the South Carolina Subclass.

463. The South Carolina Unfair Trade Practices Act ("SCUPTA") prohibits the use of any "unfair or deceptive acts or practices," or any "[u]nfair methods of competition" in connection with "the conduct of any trade or commerce." S.C. Code § 39-5-20.

464. Kimberly-Clark, Ms. Green, and the members of the South Carolina Subclass are "persons" under S.C. Code § 39-5-10(a).

465. Kimberly-Clark is engaged in "trade" or "commerce" with respect to the Wipes under S.C. Code § 39-5-10(b).

466. As detailed herein, Kimberly-Clark employed unfair or deceptive acts or practices and/or unfair methods of competition in connection with its marketing, advertising, labeling, and/or selling of the Wipes, including by selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

467. As a direct and proximate consequence of Kimberly-Clark's employment of the unfair and/or deceptive practices described herein, Ms. Green and the members of the South Carolina subclass suffered ascertainable losses of money and/or property, including amounts paid for the useless and potentially dangerous Wipes.

468. Kimberly-Clark's unfair and/or deceptive practices described herein adversely affect the public interest because they involved widespread deceptive marketing, labeling, and advertising directed to public at large, and because they imperiled public health and welfare within South Carolina and throughout the country.

469. Ms. Green and the members the South Carolina Subclass are entitled to actual damages and restitution, along with injunctive relief restraining Kimberly-Clark's unfair or deceptive acts or practices and/or unfair methods of competition described herein, plus reasonable attorneys' fees and costs.

470. Kimberly-Clark undertook the foregoing conduct willfully and/or knowingly, such that Ms. Green and the members of the South Carolina Subclass are entitled to trebled, enhanced, and/or punitive damages in accordance with S.C. Code § 39-5-140(a) and (d).

### COUNT 25
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT
#### (On Behalf of Plaintiff Bogue and the Texas Subclass)

471. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

472. Plaintiff Ruth Bogue brings this claim on behalf of herself and the Texas Subclass.

473. The Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA") prohibits the use of any "[f]alse, misleading, or deceptive acts or practices," or any "unconscionable actions" in connection with "the conduct of any trade or commerce," including representations that goods have "characteristics, ingredients, uses, benefits, or qualities that they do not have," representations that goods "are of a particular standard, quality, or grade, . . . [when] they are of another"; advertising goods "with intent not to sell them as advertised." *See* Tex. Bus. & Com. Code §§ 17.46(5), (7), and (9).

474. Ms. Bogue and the members of the Texas Subclass are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.45(d).

475. Ms. Bogue, on behalf of herself and the Texas Subclass, has complied with the notice requirement found in Tex. Bus. & Com. Code § 17.505.

476. Kimberly-Clark is a corporation, and thus a "person" that is subject to and capable of being sued under the DTPA.

477. Ms. Bogue and the members of the Texas Subclass acquired the Wipes by purchase, primarily for personal or household use.

478. Kimberly-Clark violated the DTPA by engaging in "[f]alse, misleading, or deceptive acts or practices in the conduct of its trade or commerce." *See* Tex. Bus. & Com. Code § 17.46.

479. Additionally, Kimberly-Clark violated the DTPA by representing that goods have "characteristics, ingredients, uses, benefits, or qualities that they do not have," representing that goods "are of a particular standard, quality, or grade, . . . [when] they are of another"; and advertising goods "with intent not to sell them as advertised." *See* Tex. Bus. & Com. Code §§ 17.46(5), (7), and (9).

480. Kimberly-Clark breached an express or implied warranty under Tex. Bus. & Com. Code § 17.50(2).  Such breaches were the producing cause of economic damages.

481. Kimberly-Clark engaged in unconscionable action or course of action, including one that, to Ms. Bogue's and the members of the Texas Subclass' detriment, took advantage of Ms. Bogue's and the members of the Texas Subclass' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

482. As detailed herein, Kimberly-Clark employed false, misleading, and/or deceptive acts or practices in connection with its marketing, advertising, labeling, and/or selling of the

Wipes, including by selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use; failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

483. The conduct of Kimberly-Clark described herein was committed knowingly.

484. Ms. Bogue and the members of the Texas Subclass relied upon Kimberly-Clark's false, misleading, and/or deceptive acts or practices, as described herein, in opting to purchase the contaminated Wipes that were subject to recall. Kimberly-Clark's misrepresentations and omissions were of such a nature that no reasonable consumer would have purchased the Wipes had they known that the Wipes were potentially contaminated and subject to recall.

485. Kimberly-Clark's employment of false, misleading, and/or deceptive acts or practices, as described herein, was a producing cause of economic damages suffered by Ms. Bogue and the members of the Texas Subclass, including amounts they paid for useless and potentially dangerous Wipes.

486. Further, Ms. Bogue and the members of the Texas Subclass have suffered harm by the conduct described herein, and will continue to suffer harm unless such conduct is enjoined by this Court.

487. Ms. Bogue and the members the Texas Subclass are entitled to injunctive relief restraining Kimberly-Clark's unlawful methods, acts, and/or practices described herein, along with their reasonable attorneys' fees and costs.

488. Ms. Bogue and the members the Texas Subclass are entitled to actual damages, restitution, economic damages, and other damages in an amount of up to three times their economic damages (i.e. treble damages).

### COUNT 26
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
#### (On Behalf of Plaintiff Chipman and the Washington Subclass)

489. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

490. Plaintiff Jamie Chipman brings this claim on behalf of herself and the Washington Subclass.

491. The Washington Consumer Protection Act (the "Washington CPA"), Wash. Rev. Code Ann. § 19.86 et seq., broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020.

492. Kimberly-Clark committed the acts complained of herein the course of "trade" or "commerce" within the meaning of Was. Rev. Code Ann. 19.86.010.

493. As detailed herein, Kimberly-Clark employed false, misleading, and/or deceptive acts or practices in violation of the Washington CPA in connection with its marketing, advertising, labeling, and/or selling of the Wipes, including by selling, marketing, and promoting Wipes with a defect that consisted of harmful or hazardous bacteria; omitting, suppressing, and concealing the material fact that the Wipes were unsafe and unsuitable for their intended use; misrepresenting and falsely advertising that the Wipes were safe, sanitary, and otherwise suitable for their intended use;

failing to implement adequate quality control mechanisms to detect and prevent the contamination of Wipes; failing to timely recall Wipes that were known or suspected to be contaminated; failing to timely disclose the risks associated with using Wipes that were known or suspected to be contaminated; failing to adequately notify individuals who purchased Wipes that such products were unsafe and could cause injury; and failing to automatically refund individuals who purchased Wipes that were known or suspected to be contaminated.

494. Kimberly-Clark's acts and representations described above constitute unfair and deceptive acts or practices in the conduct of trade or commerce which affect the public interest within the meaning of the Washington Consumer Protection Act, RCW 19.86.090.

495. As a direct and proximate result of Kimberly-Clark's unfair, unlawful, and fraudulent acts and practices, Plaintiff Chipman and the members of the Washington Subclass was injured and lost money or property, including the amounts they paid for Wipes which were unsafe, unsanitary, and otherwise unsuitable for their intended use, or the difference in value between the Wipes as warranted and the Wipes as actually sold, as well as consequential and incidental damages, including exposure to harmful bacteria and increased risk of adverse health consequences.

496. Kimberly-Clark acted intentionally, knowingly, and maliciously to violate Washington CPA, and recklessly disregarded the rights of Plaintiff Chipman the members of the Washington Subclass. Plaintiff and the Washington Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, costs, reasonable attorney's fees, and treble damages under RCWA 19.86.090.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed classes and subclasses they seek to represent, respectfully request that this Court:

(a) Certify the Nationwide Class and the subclasses pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiffs as Class and Subclass Representatives, and their counsel as Class and Subclass Counsel pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find Kimberly-Clark's conduct was unlawful as alleged herein;

(d) Enjoin Kimberly-Clark from engaging in further unlawful conduct as alleged herein;

(e) Award Plaintiffs and the class members nominal, actual, statutory, compensatory, consequential, and punitive damages;

(f) Award Plaintiffs and class members pre-judgment and post-judgment interest;

(g) Award Plaintiffs and class members reasonable attorneys' fees, costs, and expenses; and

(h) Grant such other relief as the Court deems just and proper.

\*      \*      \*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 29, 2022                  Respectfully submitted,

/s/ Joshua L. Hedrick
**HEDRICK KRING BAILEY PLLC**
Joshua L. Hedrick
Texas Bar No. 24061123
Mark A. Fritsche
Texas Bar No. 24100095
1700 Pacific Ave., Suite 4650
Dallas, TX 75201
Tel: (214) 880-9600
Fax: (214) 481-1844
Josh@HedrickKring.com
Mark@HedrickKring.com

Patrick J. Stueve*
J. Austin Moore*
Abby McClellan*
Crystal Cook Leftridge*
Jordan A. Kane (*pro hac vice forthcoming*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Ste. 200
Kansas City, MO 64112
Tel: (816) 714-7100
stueve@stuevesiegel.com
moore@stuevesiegel.com
mcclellan@stuevesiegel.com
cook@stuevesiegel.com
owens@stuevesiegel.com
*Admitted Pro Hac Vice*

James F. Murphy*
Jordan S. Palatiello*
**LEWIS JOHS AVALLONE AVILES, LLP**
One CA Plaza, Suite 225
Islandia, New York 11749
T: (631) 755-0101
F: (631) 755-0117
jfmurphy@lewisjohs.com

Michael R. Reese*
**REESE LLP**
100 West 93rdStreet, 16thFloor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2022, I electronically filed the forgoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Joshua L. Hedrick* ⎯⎯⎯⎯⎯
 Joshua L. Hedrick
