**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MELISSA ARMSTRONG, *et al*., individually and on behalf of other similarly situated persons,<br><br>   Plaintiffs,<br><br>v.<br><br>KIMBERLY-CLARK CORPORATION,<br><br>   Defendant. | Civil Action No. 3:20-CV-3150-M<br>LEAD CASE<br><br>(Consolidated With Civil Action No. 3:21-CV-01484-M) |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**
<u>**AND MEMORANDUM IN SUPPORT THEREOF**</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 2

   A.  Overview of the Litigation. ........................................................................... 2

   B.  The Preliminary Approval Order and Class Counsel's Continued Work. .......... 4

   C.  Terms of the Settlement. .............................................................................. 5

      1.  The Settlement Class. ........................................................................... 5

      2.  The Settlement Benefits. ....................................................................... 5

   D.  Notice Effectively Reached the Settlement Class .............................................. 7

   E.  The Reaction of the Class to the Settlement Has Been Overwhelmingly
       Positive ....................................................................................................... 8

III.  THE SETTLEMENT SHOULD BE FINALLY APPROVED. ............................................. 9

   A.  The Standard for Final Approval ..................................................................... 9

   B.  The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e)(2) and
       the Fifth Circuit *Reed* Factors. ..................................................................... 10

      1.  Class Representatives and Class Counsel Have Provided Excellent
          Representation to the Class ...................................................................... 11

      2.  The Parties Negotiated the Settlement at Arm's Length ............................. 12

      3.  The Relief Provided to the Settlement Class is Fair, Reasonable, and
          Adequate ............................................................................................. 13

      4.  The Stage of the Proceedings and the Amount of Discovery Completed ........ 17

      5.  The Probability of Success on the Merits. ................................................ 18

      6.  The Range and Certainty of Recovery. .................................................... 19

      7.  The Views of Class Counsel, Class Representatives, and Absent Class
          Members. ............................................................................................. 21

      8.  The Settlement Treats Class Members Equitably Relative to Each Other ........ 22

IV.  CLASS CERTIFICATION REMAINS APPROPRIATE. .................................................. 23

V.   THE COURT SHOULD CONFIRM ITS EARLIER APPOINTMENT OF
     CLASS COUNSEL AND SETTLEMENT CLASS REPRESENTATIVES........................ 24

VI.  CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................ 13, 17

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................ 10

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ................................................... passim

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................. 10, 16, 19, 21

*Hays v. Eaton Grp. Att'ys, LLC*,
   2019 WL 427331 (M.D. La. Feb. 4, 2019) ..................................... 10, 19

*In re Corrugated Container Antitrust Litigation*,
   643 F.2d 195 (5th Cir. 1981) ................................................................ 18

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005) ........................................................ 21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................. 10, 13

*In re Heelys, Inc. Derivative Litig.*,
   2009 WL 10704478 (N.D. Tex. Nov. 17, 2009) ................................. 17

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*,
   910 F. Supp. 2d 891 (E.D. La. 2012) ................................................. 10, 22

*Izzio v. Century Golf Partners Mgmt., L.P.*,
   2019 WL 10589568 (N.D. Tex. Feb. 13, 2019) ................................. 14

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.3d 714 (5th Cir. 1974) ............................................................... 16

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ............................................................... 20

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ............................................................... 10

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................. 13, 20

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
   2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) .......................................................... 13, 15, 22

*Matson v. NIBCO Inc.*,
   2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) .......................................................... 18

*Melby v. Am.'s MHT, Inc.*,
   2018 WL 10399004 (N.D. Tex. June 22, 2018) .......................................................... 13, 14

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) .......................................................... 10

*ODonnell v. Harris Cty., Texas*,
   2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .......................................................... 10, 18

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .......................................................... 21

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .......................................................... 20

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .......................................................... passim

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .......................................................... 14, 18

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .......................................................... 22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .......................................................... 20

*Torregano v. Sader Power, LLC*,
   2019 WL 969822 (E.D. La. Feb. 28, 2019) .......................................................... 16

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) .......................................................... 20

*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) .......................................................... 16

*Welsh v. Navy Fed. Credit Union*,
   2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .......................................................... 12

## **Statutes**

28 U.S.C. § 1715(b) .......................................................... 8

**Rules**

Fed. R. Civ. P. 5(b) ................................................................................ 25

Fed. R. Civ. P. 23(a) .............................................................................. 23

Fed. R. Civ. P. 23(b) .............................................................................. 23

Fed. R. Civ. P. 23(c) ................................................................................ 8

Fed. R. Civ. P. 23(e) ....................................................................... passim

Fed. R. Civ. P. 23(g) ..................................................................... 4, 12, 24

**Other Authorities**

H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. 2002) ................................................. 19

## I.    INTRODUCTION

After nearly three years of hard-fought litigation and extensive settlement negotiations, including four, full-day mediation sessions guided by the Honorable Justice Deborah Hankinson (Ret.) acting as mediator, the Parties reached a proposed Settlement to resolve consumer economic loss claims arising from Kimberly Clark's recall of Cottonelle Flushable Wipes ("Wipes") announced in October 2020. The Settlement requires Kimberly-Clark to pay a non-reversionary amount of at least $6,000,000 in new dollars, and up to $13,500,000, to pay valid claims of Settlement Class Members who purchased recalled Wipes. Together with the $4,000,000 Kimberly-Clark previously paid as part of its refund program,[1] this Settlement ensures that at least $10,000,000, and up to $17,500,000, will be spent in connection with reimbursing consumers who purchased recalled lots of Wipes. In addition, Kimberly-Clark will separately pay for the costs of notice, settlement administration, and attorneys' fees and expenses. Importantly, the Settlement does *not* release claims of Class Members who experienced personal injuries.

The deadlines to object, opt-out, and submit claims have now passed, and the Settlement has received an overwhelmingly positive response from the Settlement Class. Following a robust notice process, more than 3,100,000 Settlement Class Members submitted claims, seeking total reimbursement of more than $19,400,000.[2]  Additionally, only 24 Settlement Class Members have

---

[1] Kimberly-Clark previously paid approximately $4,000,000 in activated refund cards issued through its Recall and Refund Program. *See* Doc. 117-1 ¶ 2.28; *see also* Doc. 123-1 ¶¶ 7–8 (describing Class Counsel's negotiation efforts relating to the Program).

[2] The Settlement Administrator is still in the process vetting the Claim Forms, which include identifying potential duplicate claims, fraudulent claims, and following up with Class Members who submitted insufficient or incorrect documentation supporting their claim. Ex. 2 ¶ 25.

timely requested exclusion from the Settlement, and no Settlement Class Member has objected to the Settlement.

As evidenced by the substantial number of claims and overwhelmingly positive response from the Class, the Settlement is fair, reasonable, and adequate, and meets the requirements of Rule 23(e). Plaintiffs therefore move for final approval of the Settlement.[3] In support of this Motion, Plaintiffs submit the Declaration of Interim Class Counsel ("Class Counsel Dec.") as **Exhibit 1**; and the Declaration of Jeanne C. Finegan from Kroll Settlement Administration, LLC ("Kroll Dec.") as **Exhibit 2**.[4]

## II.    BACKGROUND

### A.    Overview of the Litigation.

The excellent result of this Settlement is due to over three years of thorough and strategic work by Plaintiffs and Class Counsel, which included the consolidation of two class actions, motion practice, and extensive discovery and mediation efforts. That history, summarized below, is detailed in the Declaration of Class Counsel in Support of Plaintiffs' Motion for Approval of Attorney's Fees, Expenses, and Service Awards. Doc. 123-1 ¶¶ 3–20.

In October 2020, Wipes users Melissa Armstrong and Roland Nadeau initiated a class action lawsuit in this Court against Kimberly-Clark in the Northern District of Texas on behalf of a putative nationwide class of Wipes purchasers, along with a California subclass, alleging that the Wipes were contaminated with a bacterial strain called *Pluralibacter gergoviae*. Doc. 123-1 ¶ 4. After consolidating with a similar New York lawsuit in July 2021, Class Counsel filed a

---

[3] Class Counsel has separately filed their Motion for Approval of Attorneys' Fees, Expenses, and Services Awards. *See* Doc. 123.

[4] Plaintiffs submit a Proposed Order as **Exhibit 3** and Proposed Final Judgment as **Exhibit 4**.

Consolidated Class Action Complaint on March 22, 2022. *Id.* ¶¶ 5–6; Doc. 64. The Complaint included 22 plaintiffs from 17 states, asserting 26 causes of action. *Id.* On September 27, 2023, Class Counsel filed a First Amended Consolidated Complaint. Doc. 119.

Since late 2020, the Parties pursued resolution through arm's length settlement negotiations. Doc. 123-1 ¶ 9. These efforts culminated in substantial exchanges of information (including information about the cause of the contaminations, consumer complaints and sales data) and settlement proposals, including four, full-day mediations guided by Justice Hankinson between December 2021 and May 2023. *Id.*

On December 7, 2021, the Parties participated in the first all-day, in-person mediation session in Dallas, Texas before Justice Hankinson after exchanging detailed mediation briefs setting forth the Parties' respective positions. *Id.* ¶ 10. While the Parties were unable to reach a resolution at that first session, the Parties continued to negotiate with the assistance of Justice Hankinson, including through several telephone conferences from January through May of 2022 in advance of a second mediation session. *Id.*

On June 1, 2022, the Parties participated in a second all-day mediation session with Justice Hankinson. *Id.* ¶ 14. After no resolution was reached, the Parties focused efforts on discovery and motion practice. *Id.* The Parties negotiated a protective order and briefed Kimberly-Clark's product preservation sampling methodology. *Id.*; Docs. 95, 97. Class Counsel also served document requests on Kimberly-Clark and continued seeking Class Member contact information from retailers. Doc. 123-1 ¶ 14. Kimberly-Clark also filed a motion to dismiss, which the Parties fully briefed and then argued before this Court on September 7, 2022. *Id.* ¶ 15.

On January 10, 2023, the Parties participated in a third, full-day mediation session with Justice Hankinson. *Id.* ¶ 16. Though the Parties did not reach agreement at the mediation, Justice

Hankinson made a mediator's proposal on the monetary terms of settlement that was ultimately accepted by both Parties. *Id.* Thereafter, the Parties continued to negotiate the other terms of settlement with the assistance of Justice Hankinson. *Id.* ¶ 17.

On May 1, 2023, the Parties participated in a fourth mediation session with Justice Hankinson to assist negotiations with attorneys' fees and costs. *Id.* Following that session, Justice Hankinson issued a mediator's proposal on fees and costs that was accepted by both Parties. *Id.*

### B.    The Preliminary Approval Order and Class Counsel's Continued Work.

On September 22, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval and to Direct Notice of Proposed Settlement to the Class and Memorandum in Support Thereof. Doc. 117. On September 27, 2023, the Court entered its Order granting Plaintiffs' motion, finding that the Court would likely be able to: (1) approve the Settlement as fair, reasonable, and adequate, and (2) certify the Settlement Class for purposes of judgment on the Settlement. *See* Doc. 120. The Court appointed J. Austin Moore of Stueve Siegel Hanson, LLP; Joshua L. Hedrick of Hedrick Kring Bailey PLLC (now of Spencer Fane LLP); Michael R. Reese of Reese LLP; and Jordan S. Palatiello of Lewis Johs Avallone Aviles, LLP as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3) to act on behalf of the Settlement Class. *Id.* ¶ 10.

In the months since the Court granted preliminary approval of the Settlement and approved Notice, Class Counsel have remained hard at work. Ex. 1 ¶¶ 4, 20–22. Class Counsel have spent significant time overseeing the claims and notice process and communicating with the Settlement Administrator to ensure that administration of the settlement is on schedule and meets the requirements of the Court's Preliminary Approval Order. *Id.* ¶ 20. This included reviewing the website to make sure it was correct and user-friendly, reviewing weekly reports from and conferring with Kroll regarding the claims process, responding to inquiries from Settlement Class

Members, and preparing submissions for the Court's consideration at the Final Approval Hearing. *Id.* ¶¶ 20–21.

### C.    Terms of the Settlement.

#### 1.    The Settlement Class.

In its Preliminary Approval Order, the Court certified, for settlement purposes, the following Settlement Class:

> All persons in the United States and United States territories who purchased recalled lots of Cottonelle Flushable Wipes ("Wipes") between February 7, 2020 and December 31, 2020 for personal use and not for resale, and any persons residing in the same household.

Doc. 120 ¶ 8. Excluded from the Settlement Class are: (1) Kimberly-Clark, its subsidiaries, parent companies, successors, predecessors, and any entity in which Kimberly-Clark or its parents have a controlling interest and their current or former officers, directors, and employees; (2) the Court and its officers and employees; and (3) any Settlement Class Members who submit a valid Request for Exclusion on or before the Opt-Out Deadline. *Id.* ¶ 8 fn. 2.

#### 2.    The Settlement Benefits.

In exchange for the release of Settlement Class Members' claims against Kimberly-Clark, excluding personal injury claims, Kimberly-Clark will fund a non-reversionary minimum of $6,000,000, and a maximum of $13,500,000 to pay approved claims. Ex. 1 ¶ 5; Doc. 117-1 ¶ 7.5(b). Accounting for the $4,000,000 Kimberly-Clark already paid in activated cards through its refund program, Kimberly-Clark will pay at least $10,000,000 and up to $17,500,000 in connection with refunds to consumers who purchased recalled lots of Wipes. Ex. 1 ¶ 5; Doc. 117-1 ¶¶ 2.17–2.18.

Settlement Class Members who submit a valid Claim with proof of purchase are eligible for reimbursement up to a maximum of 100% of the amount for which they provide proof of

purchase. Ex. 1 ¶ 6; Doc. 117-1 ¶ 7.5(b). Settlement Class Members who submit a valid Claim without proof of purchase are eligible for reimbursement of up to five dollars ($5.00) per household. Ex. 1 ¶ 6; Doc. 117-1 ¶ 7.5(a).  If the total Amount Payable for Approved Claims exceeds $13,500,000, payments to Settlement Class Members will be reduced *pro rata*. Ex. 1 ¶ 8; Doc. 117-1 ¶ 6.4.

Pursuant to the Agreement, Kimberly-Clark will pay costs of Notice and Administration Expenses and any Fee Award and Costs separately from the maximum of $13,500,000 in new dollars for approved claims.[5] Ex. 1 ¶ 7; Doc. 117-1 ¶¶ 6.4, 12.2. If the total Amount Payable for Approved Claims exceeds $13,500,000, Service Awards will also be paid separately by Kimberly-Clark. Ex. 1 ¶ 7; Doc. 117-1 ¶ 12.1.

The Settlement Administrator previously estimated that Notice and Administration Expenses will be $1,361,405,[6] which will be paid separately by Kimberly-Clark. Doc. 123-1 ¶ 23; Ex. 1 ¶ 7. On December 5, 2023, Class Counsel filed its Motion for Approval of Attorneys' Fees, Expenses, and Service Awards (Doc. 123), seeking $3,650,000 in fees and expenses, and $2,500 in Service Awards for each Settlement Class Representative. The attorneys' fees and expenses provision was separately and independently negotiated by the Parties only after the Class relief was agreed upon, with the assistance of Justice Hankinson, and the Settlement Agreement is not conditioned on its approval. Ex. 1 ¶ 7 fn. 2; Doc. 123-1 ¶ 23.

---

[5] Unless the sum of the Amount Payable for Approved Claims is less than $6,000,000, in which case Kimberly-Clark will receive a credit towards its other obligations under the Settlement, first to Notice and Administration Expenses, and second to the Fee Award and Costs. Ex. 1 ¶ 7; Doc. 117-1 ¶ 6.4.

[6] The final amount of Notice and Administration Expenses will be determined and negotiated with Kimberly-Clark following Kroll's completion of the claims vetting process. Ex. 1 ¶ 7.

### D.    Notice Effectively Reached the Settlement Class.

To ensure that direct Notice would be provided to the Class, Class Counsel dedicated substantial time and effort to working with third-party retailers to obtain sales data relating to the Wipes and Class Member contact information. Ex. 1 ¶ 11. Class Counsel served over 30 third-party subpoenas and conducted months of individual negotiations with dozens of retailers, all of which were represented by counsel. *Id.* While time consuming, these efforts were effective: they ultimately allowed the Parties to obtain Class Member information for more than 4,800,000 putative Class Members. *Id.*

On November 9–10, 2023, the Settlement Administrator and Amazon, Inc. mailed and emailed the Court-approved Class Notice to members of the Settlement Class. Ex. 1 ¶ 16; Ex. 2 ¶¶ 12–17. The Notice (1) informed Settlement Class Members of the Settlement and relevant terms, (2) provided Settlement Class Members the URL to the Settlement Website and a telephone number through which they can obtain additional information about the Settlement, and (3) instructed Settlement Class Members on how to make a Claim. Ex. 1 ¶ 14. The Notice also informed Settlement Class Members that Class Counsel would seek combined attorneys' fees and expenses totaling $3,650,000.00 and service award payments of $2,500 for each Plaintiff for their service as representatives on behalf of the Settlement Class. *Id.* In total, the Settlement Administrator successfully sent 2,491,739 notices via email and 1,255,140 via mail (Ex. 1 ¶ 16; Ex. 2 ¶ 17) and, upon information and belief, Amazon, Inc. sent notice to 1,080,663 putative Class Members via email. Ex. 1 ¶ 16.[7]

_____

[7] In advance of the Final Approval Hearing, Class Counsel will submit a Declaration from Amazon to address Amazon's provision of email Notice. *Id.*

Notice was also provided by publication that included display banner ads that targeted Cottonelle product purchasers, keyword search advertisements utilized on Google Ads, and social media advertising on platforms including Facebook, Instagram, and YouTube. Ex. 1 ¶ 16; Ex. 2 ¶¶ 18–23.

The Settlement website (www.wipesettlement.com) was made publicly accessible on November 9, 2023. Ex. 2 ¶ 9. The website contains a summary of the Settlement, allows Settlement Class Members to contact the Settlement Administrator with any questions or change of address, provides notice of important dates such as the Claims Deadline, Objection Deadline, Opt-Out Deadline, and Final Approval Hearing date, and provides Settlement Class Members an opportunity to file a Claim Form online. *Id.* The website also contains relevant case documents including the Settlement Agreement, the Notice, the Preliminary Approval Order, the Claim Form, and the Complaint. To date, the Settlement website has had 8,082,962 unique visitors. *Id.*

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), CAFA Notice was mailed on October 2, 2023 to appropriate officials. Ex. 2 ¶ 7. The 90-day statutory notice period has expired and neither Class Counsel nor the Settlement Administrator has received any inquiries from any federal or state official in response to the CAFA notice. Ex. 1 ¶ 13; Ex. 2 ¶ 7.

Thus, the Notice Plan has been executed in accordance with the Court's Preliminary Approval Order in a manner that ensured Settlement Class Members' due process rights were amply protected. *See* Fed. R. Civ. P. 23(c)(2)(B). *See* Ex. 1 ¶ 18; Ex. 2 ¶ 30.

### E.    The Reaction of the Class to the Settlement Has Been Overwhelmingly Positive.

The reaction from the Settlement Class Members has been overwhelmingly positive and strongly supports final approval. The deadline for submitting claims was January 16, 2024. As of

that date, the Settlement Administrator received 3,127,704 claims. Ex. 2 ¶ 25. This includes 69,797 claims submitted with proof of purchase, and 3,057,936 claims submitted without proof of purchase. *Id.*

The Opt-Out and Objection Deadline was December 26, 2023. As of today's date, only 24 Settlement Class Members have timely requested exclusion from the Settlement, and no Settlement Class Members have filed any objections. Ex. 2 ¶¶ 28–29.

## III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED.

### A.    The Standard for Final Approval.

In evaluating the fairness of a proposed settlement, courts consider the factors articulated in Rule 23(e)(2), including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.[8]

---

[8] Rule 23(e) contemplates that the parties will identify "any agreement made in connection with the proposal." Class Counsel have confirmed that no agreements exist other than those outlined herein and reflected in the Settlement Agreement. Ex. 1 ¶ 33; *see* Doc. 117-1.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit also evaluate the *Reed* factors to determine whether a proposed class action settlement is fair, reasonable, and adequate. *See Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). These factors include:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *ODonnell v. Harris Cty., Texas*, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) ("Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements.").

### B.    The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e)(2) and the Fifth Circuit *Reed* Factors.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012)). "This presumption reflects the strong public interest in settling class actions." *ODonnell*, 2019 WL 4224040, at *8 (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *Hays v. Eaton Grp. Att'ys, LLC*, 2019 WL 427331, at *8 (M.D. La. Feb. 4, 2019) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable[,] and adequate.") (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012)).

The Court concluded these factors supported the finding that the Court would likely approve the Settlement as fair, reasonable, and adequate such that issuance of notice to the Settlement Class was justified. Doc. 120. For the reasons set forth herein, in Plaintiffs' Preliminary Approval Motion (Doc. 117), and the Court's Preliminary Approval Order (Doc. 120), Plaintiffs now respectfully request that the Court find that the Settlement is fair, reasonable and adequate under Rule 23(e)(2), and enter an order finally approving it.

### 1.    Class Representatives and Class Counsel Have Provided Excellent Representation to the Class.[9]

Class Representatives and Class Counsel have vigorously and adequately represented the Class since the start of the litigation. First, the Class Representatives have shown their dedication to representing the Class by actively participating in the litigation, providing allegations for the Complaint, gathering information for informal and formal discovery, and working with Class Counsel to advance the litigation on behalf of themselves and all members of the proposed Settlement Class. Ex. 1 ¶ 26; *see* Doc. 120 ¶¶ 3, 9 (finding Class Representatives have "adequately represented the Settlement Class," and "will fairly and adequately represent the interests of the Settlement Class in enforcing their rights in the Action").

Second, as demonstrated in connection with Plaintiffs Motion for Preliminary Approval (Doc. 117) and Plaintiffs' Motion for Approval of Attorneys' Fees (Doc. 123), Class Counsel are highly experienced in handling class action litigation, particularly with respect to consumer claims like those at issue here and have vigorously prosecuted the claims in this case. Ex. 1 ¶ 26; *see* Doc. 117 at 40; Doc. 123-1 ¶¶ 3–20, 29–39. As a result of Class Counsel's efforts, the proposed Settlement Agreement provides significant monetary relief to the Settlement Class. Ex. 1 ¶ 26. In

---

[9] *See* Fed. R. Civ. P. 23(e)(2)(A).

preliminarily approving the Settlement and permitting issuance of class notice, the Court recognized that "Proposed Class Counsel are highly experienced in complex class actions," and "have adequately represented the Settlement Class." Doc. 120 ¶ 3. The Court thus appointed these counsel as Interim Class Counsel of the proposed Settlement Class pursuant to Rule 23(g)(3) pending final approval of the Settlement. *Id.* ¶ 10. Since that appointment, Class Counsel have remained hard at work overseeing the notice program and claims process and will continue to do so until the Settlement is fully implemented. Ex. 1 ¶ 26. This factor supports final approval.

### 2.    The Parties Negotiated the Settlement at Arm's Length.[10]

As explained in Part II(A), *supra*, the proposed Settlement is the product of significant negotiation by experienced counsel on both sides with the assistance of a neutral mediator, culminating in the execution of the Agreement. Ex. 1 ¶ 27. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair, reasonable, and adequate. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may…presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."). Nothing has changed to alter the Court's preliminary determination that the Settlement is the "is the result of adversarial, arm's length, informed, and non-collusive negotiations between the Parties." Doc. 120 ¶ 4. Thus, this factor supports final approval.

---

[10] *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172 (stating the first *Reed* factor: the existence of fraud or collusion in the negotiation).

3.    **The Relief Provided to the Settlement Class is Fair, Reasonable, and Adequate.[11]**

a.    **The costs, risks, and delay of trial and appeal.[12]**

The commitment of at least $6,000,000 in new dollars and up to $13,500,000 to pay approved claims is an excellent result for the Class in light of the duration, costs, risks, and delay of trial and appeal, supporting a finding that the Settlement is fair, reasonable, and adequate. Ex. 1 ¶ 28. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Heartland*, 851 F. Supp. 2d at 1064 (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010)); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling…avoids the risks and burdens of potentially protracted litigation.").

While Plaintiffs are confident in the merits of their claims, Plaintiffs' Complaint raises complex legal and factual issues, including those briefed and argued in relation to Kimberly-Clark's pending motion to dismiss, and there are many issues on which Plaintiffs and the class would have to prevail to obtain a class-wide judgment for the full damages allegedly suffered. Ex. 1 ¶ 28. At a minimum, continued litigation would require "a significant amount of time and expense" associated with written discovery, depositions, the hiring and preparation of experts, motion practice, and trial. Ex. 1 ¶ 28; *Melby v. Am.'s MHT, Inc.*, 2018 WL 10399004, at *8 (N.D. Tex. June 22, 2018); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, 2022 WL 16821685, at *11 (N.D. Tex. Oct. 14, 2022) ("The fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to say nothing of potential appeals").

---

[11] *See Reed*, 703 F.2d at 172.

[12] *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

Settlement Class Members, Kimberly-Clark, and likely witnesses are also located across the country, further increasing the cost of continued proceedings, which would likely be followed by a lengthy appeal, regardless of the outcome. Ex. 1 ¶ 28. The amount of time it would take to recover on behalf of the class "would measure in years rather than months were the Court to disapprove the proposed settlement." *Melby*, 2018 WL 10399004, at *8; *see Schwartz v. TXU Corp.*, 2005 WL 3148350, at *19 (N.D. Tex. Nov. 8, 2005) (weighing a potential "delay in the receipt of any relief" in favor of approving a proposed settlement). In short, a "swift resolution of this dispute would avoid complex and protracted litigation," and this weighs in favor of approval. *See, e.g., Izzio v. Century Golf Partners Mgmt., L.P.*, 2019 WL 10589568, at *6 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019). In light of these serious risks, the Settlement, which secures the primary relief sought by Plaintiffs, is an outstanding result and this factor supports final approval. *See* Ex. 1 ¶ 28.

### b. The effectiveness of the proposed method of distributing relief to the Settlement Class.[13]

This factor considers whether the claims process is "unduly demanding" on potential class members. Fed. R. Civ. P. 23. The effectiveness of the Notice Plan, and the overwhelmingly positive response to the Settlement to date, confirm the Court's preliminary assessment that "the proposed method for distributing relief to the Settlement Class Members is adequate and effective." Doc. 120 ¶ 6; Ex. 1 ¶ 28. The Notice Plan resulted in direct notice to over 4,800,000 consumers, a direct result of the exhaustive efforts of Class Counsel to obtain class contact information from third-party retailers. Ex. 1 ¶ 29. As evidenced by the over 3,100,000 claims submitted in this case, the claims process was straightforward and consumer-friendly. Over 69,000

---

[13] *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

consumers submitted claims with proof of purchase, and they are eligible to receive up to 100% of the purchase price, subject to any *pro rata* reductions. *Id.* ¶ 29. Over 3,000,000 consumers submitted claims without proof of purchase, and they are eligible to receive up to $5.00 per household. *Id.* All of these claims are currently being considered by the court-appointed Settlement Administrator. *Id.* Thus, this factor weighs in favor of final approval. *See Kostka*, 2022 WL 16821685, at *12 (finding this consideration favored approval where potential class members only needed to submit a claim form to have their claims considered by an experienced claims administrator).

### c.    The terms for the award of attorneys' fees, including the timing of payment.[14]

Class Counsel have requested an award of attorneys' fees in the amount of $3,547,157, reimbursement of $102,843.30 in expenses, and Class Representative Service Awards of $2,500 for each Settlement Class Representative. Doc. 123, Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (Doc. 123) (the "Motion for Attorneys' Fees").

The requested attorneys' fees are fair and reasonable under the "percentage-of-the-fund method" typically used by district courts in this Circuit in awarding attorneys' fees in constructive common fund cases. Ex. 1 ¶ 30(a); *see* Doc. 123 at 11–21. Because Plaintiffs' Motion for Attorneys' Fees was filed before the Claims Deadline on January 16, 2024, Plaintiffs' initial percentage-of-the-fund analysis projected that the fee request would equal between 16.2%–24.3% of the constructive fund, taking into consideration Kimberly-Clark's commitment to pay at least $6,000,000, and up to $13,500,000 to satisfy approved claims. *See* Doc. 123 at Section IV(A)(1).

---

[14] *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

15

Although the claims review process is ongoing, the Claims Deadline (January 16, 2024) has now passed. Ex. 1 ¶ 30(a). Given the over 3,100,000 claims submitted for reimbursement, Class Counsel values the settlement at $22,566,405, which is the total of: $17,500,000 allocated to pay customers who purchased recalled Wipes (which includes $4,000,000 in activated refund cards); (2) attorneys' fees and expenses ($3,650,000); (3) Notice and Administration Expenses (estimated at $1,361,405); and (3) Service Awards ($55,000). *See* Doc. 123 at 19. Under this valuation, the fee request is 16.2% of the constructive fund. Ex. 1 ¶ 30(a); *see* Doc. 123 at 19. Even if the Court were to not credit the $4,000,000 paid in connection with Kimberly-Clark's refund program, the settlement's value is still $18,566,405, resulting in a fee request equaling 19.7% of the constructive fund. Ex. 1 ¶ 30(a).

In either scenario, Class Counsel's fee request is significantly less than typical benchmark fee awards in this Circuit, which typically range between 30% and 33%, and is well within the range of reasonableness. Ex. 1 ¶ 30(a); *see* Doc. 123; *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting district court found thirty percent contingency fee "is a reasonable rate"); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *9–10 (citing cases) (approving 33⅓% fee as "within the range of percentage fees awarded in the Fifth Circuit in other complex cases" and noting that "numerous courts in this Circuit have awarded fees in the 30% to 36% range."); *Torregano v. Sader Power, LLC*, 2019 WL 969822, at *3 (E.D. La. Feb. 28, 2019) ("awards in this circuit in the range of 33% are commonplace.").

The requested award of attorneys' fees is also more than reasonable under the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.3d 714, 719–20 (5th Cir. 1974), including the extraordinary benefits conferred by the Settlement, the numerous and substantial risks faced by Class Counsel, the complexity and efficient resolution of the litigation, the skill of

counsel for both Parties, and the positive reaction of the Settlement Class. Ex. 1 ¶ 30(b); *see* Doc. 123.

Further, a lodestar-multiplier cross-check confirmed that at the time Plaintiff filed their motion the requested fee represented a negative multiplier of .77 on Class Counsel's lodestar. Ex. 1 ¶ 30(c); Doc. 123 at 30–31; Doc. 123-1 ¶¶ 41–56. That negative multiplier has continued to increase as Class Counsel has continued to spend time overseeing the settlement claims process and preparing for final approval. Ex. 1 ¶ 30(c). For these reasons, and those stated in Plaintiffs' Motion for Attorneys' Fees, the negative lodestar cross check strongly supports a finding that the award is reasonable. Doc. 123 at Section IV(B)(3); *see, e.g., In re Heelys, Inc. Derivative Litig.*, 2009 WL 10704478, at *11 (N.D. Tex. Nov. 17, 2009) (finding fee award resulting in a negative multiplier of 0.94 on counsel's lodestar "demonstrably reasonable"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.").

Finally, the proposed fees, expenses, and service awards "do not diminish the recovery available to the Settlement Class Members," which this Court noted supports "a finding that the Court will likely be able to approve the Settlement." Doc. 120 ¶ 7; *see* Ex. 1 ¶ 30. Thus, this factor supports final approval.

### 4.    The Stage of the Proceedings and the Amount of Discovery Completed.[15]

This factor requires the court to look to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d

---

[15] *Reed*, 703 F.2d at 172.

at 369. As explained in Part II(A), *supra*, Counsel for the Parties engaged in intensive mediation efforts, including four formal mediation sessions and numerous conferences, with the assistance of Justice Hankinson. Ex. 1 ¶ 27. To inform those efforts, the Parties participated in extensive settlement-related discovery to permit counsel to weigh the relative strengths and weaknesses of their respective cases. *Id.* Under these circumstances, there is "no doubt" that Plaintiffs were "able to form an adequate appreciation of the merits of the case before negotiating." *Schwartz*, 2005 WL 3148350, at *19–20 (cleaned up); *Matson v. NIBCO Inc.*, 2021 WL 4895915, at *10 (W.D. Tex. Oct. 20, 2021) (noting the central question is "whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it."); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981) (explaining the trial court "may legitimately presume that counsel's judgment that 'they had achieved the desired quantum information necessary to achieve a settlement' is reliable"). Thus, this factor supports final approval.

### 5.    The Probability of Success on the Merits.[16]

"The probability of the plaintiffs' success on the merits is the most important *Reed* factor, 'absent fraud and collusion.'" *ODonnell*, 2019 WL 4224040, at *11. "This factor relates to the 'risks…of trial and appeal,'" the Rule 23(e)(2) consideration discussed at Part II(B)(3)(a), *supra*. *See id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(i)). "In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172).

---

[16] *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

"This factor favors approving a settlement even when the likelihood of success on the merits is not certain." *Id.*

While Plaintiffs are confident in the merits of their theory of liability and ability to prove the claims of the absent Class Members, there remain significant obstacles to a class-wide judgment in favor of the class on liability and damages. Ex. 1 ¶ 28. Even if Plaintiffs survived Kimberly-Clark's motion to dismiss, achieved class certification, and prevailed at trial on behalf of the class, there is the risk that, after years-long litigation, that the Fifth Circuit could reverse on the merits. *Id.*

While continued litigation presents serious risks, the Settlement provides immediate and substantial benefits to Class Members, including the very relief that this litigation sought to achieve. *Id.* Thus, this factor supports final approval of the Settlement. *See Hays*, 2019 WL 427331, at *10 ("[A]pproval of settlement is favored where settling 'avoids the risks and burdens of potentially protracted litigation.'"); Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 6.     The Range and Certainty of Recovery.[17]

"The focus of this factor is whether the settlement falls within the range of reasonableness." *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *5. Courts compare the recovery for the class under the proposed agreement to "the relief the class could expect to recover at trial, i.e., the strength of the plaintiff's case." *Id.* As a result, this factor "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a

---

[17] *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

small amount." *Klein*, 705 F. Supp. 2d at 656. When considering the possible range of recovery, a court should keep in mind that "compromise is the essence of a settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 850 (E.D. La. 2007). Thus, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649; *see also Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978) ("compromise is the essence of settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial").

The Settlement, which provides for up to $13,500,000 in new dollars dedicated solely to approved claims, is an excellent result given the range and certainty of recovery for a significant portion of the Class. Ex. 1 ¶ 31. While the parties cannot identify the precise number of consumers impacted, over 4,800,000 potential Class Members received direct notice of the Settlement because of Class Counsel's efforts to secure contact information for consumers through third-party subpoenas. *Id.* Over 3,100,000 claims have been filed to date—an excellent result given that most consumer class settlements, including those involving similar products, do not see this volume of response. *Id.*; *see, e.g., Kurtz v. Kimberly-Clark Corp.*, Case No. 14-cv-01142, Dkt. 471 (E.D.N.Y. June 12, 2023) (relying solely on publication notice, 2% claims rate in estimated class of 9.3 million purchasers of flushable wipes products); *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions.") (collecting cases); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (claims rates in consumer class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"). Thus, this factor supports a finding that the Settlement should be finally approved.

7.    **The Views of Class Counsel, Class Representatives, and Absent Class Members.**[18]

The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval. Ex. 1 ¶¶ 23–24, 32. The deadlines to submit claims, requests for exclusion, and objections have now passed. *See* Doc. 120. As of today's date, more than 3,100,000 have been submitted, only 24 Settlement Class Members have timely requested exclusion, and, to date, no Settlement Class Members have filed or served any objections to the Settlement. Ex. 1 ¶¶ 23–24; Ex. 2 ¶¶ 28–29. Thus, the favorable reception by the class constitutes strong evidence of the fairness of the Settlement and supports approval. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at \*5 ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement.") (citing *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 567 (S.D. Tex. 2005)); *DeHoyos*, 240 F.R.D. at 293 ("Given the wide reach of the notice versus the small number of objections, the Court finds the opinions of class counsel, the class representatives, and the absent class members weigh in favor of approving the settlement.") (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than 4% of class).

Further, the Class Representatives and Class Counsel strongly believe the Settlement is fair, reasonable, adequate, and in the best interest of Settlement Class Members. Ex. 1 ¶ 32. "The endorsement of class counsel is entitled to deference, especially in light of class counsels' significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of

---

[18] *See Reed*, 703 F.2d at 172.

a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"). Thus, this factor supports final approval.

**8.    The Settlement Treats Class Members Equitably Relative to Each Other.[19]**

As the Court's Preliminary Approval Order recognized, the Settlement treats Settlement Class Members "equitably relative to each other." Doc. 120 ¶ 7. All Settlement Class Members who submit valid claims are eligible to recover money spent on Wipes. Ex. 1 ¶ 33. Because Settlement Class Members who can demonstrate that they suffered non-reimbursed losses have a stronger claim than Class Members who cannot, the Settlement allows Settlement Class Members who submit proof of purchase the opportunity to recover one hundred percent (100%) of money spent on Wipes, whereas Settlement Class Members that are unable to provide proof of purchase may recover up to five dollars. Ex. 1 ¶ 6. Thus, this consideration weighs in favor of final approval. *See, e.g., Kostka*, 2022 WL 16821685, at *13 ("Indeed, if the proposed settlement did not account for the relative strength of these groups' claims, it would likely not be equitable"); *In re Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 948 (citing *Reed*, 703 F.2d at 175) ("It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class members' claims.").

\*        \*        \*

Accordingly, the Rule 23(e) and Fifth Circuit *Reed* factors support a finding that the Settlement is fair, reasonable, and adequate, and therefore, that it should be finally approved after the Final Approval Hearing on March 6, 2024.

---

[19] *See* Fed. R. Civ. P. 23(e)(2)(D).

## IV.     CLASS CERTIFICATION REMAINS APPROPRIATE.

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class for settlement purposes, finding that the class met each of Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and that the class met each of Rule 23(b)(3)'s requirements of predominance and superiority. Doc. 120 ¶ 9 (finding plaintiffs "will fairly and adequately represent the interests of the Settlement Class" and "are similarly situated to absent Settlement Class Members and are therefore typical of the Settlement Class[] [Members], and that they will be adequate class representatives."); *Id.* ¶ 3 (finding "the Class Representatives and Proposed Class Counsel have adequately represented the Settlement Class. Proposed Class Counsel are highly experienced in complex class actions…").

Nothing has changed since the Courts ruling to call the Court's conclusions regarding class certification into question. The Settlement Class is numerous—over 4,800,000 consumers received notice in this case. *See* Ex. 1 ¶ 16; Ex. 2 ¶ 17; Doc. 117 at 37. There are common issues regarding Kimberly-Clark's course of conduct relating to the contamination, distribution, and recall of the Wipes that predominate over individual issues. *See* Doc. 117 at 38–39, 41–42. Indeed, class-wide resolution is superior, because it is the only practical means through which the millions of Settlement Class Members may obtain relief. *See id.* at 42–43. The Settlement Class Representatives' claims are typical of the claims of Class Members, including because they allege the same injury: economic losses stemming from their purchase of recalled lots of Cottonelle Flushable Wipes. *Id.* at 39; Doc. 120 ¶ 9. Further, Plaintiffs adequately performed their duties as class representatives and do not possess and conflicts of interest with the Class Members. Doc. 117 at 40–41; Doc. 120 ¶¶ 3, 9. Finally, as demonstrated in Plaintiffs' Motion for Attorneys' Fees, (Doc. 123), also set to be heard at the Final Approval Hearing, Class Counsel have extensive experience in complex consumer class action litigation, zealously prosecuted the putative Class's

23

claims, have adequately represented the Settlement Class to date, and are well qualified to represent the Settlement Class. Doc. 117 at 40; Doc. 123-1 ¶¶ 3–20, 29–39. Accordingly, for the reasons set forth in the Preliminary approval Motion, Plaintiffs ask that the Court certify the Settlement Class.

## V.     THE COURT SHOULD CONFIRM ITS EARLIER APPOINTMENT OF CLASS COUNSEL AND SETTLEMENT CLASS REPRESENTATIVES.

The Court appointed J. Austin Moore of Stueve Siegel Hanson LLP, Joshua L. Hedrick of Spencer Fane LLP, Michael R. Reese of Reese LLP; and Jordan S. Palatiello of Lewis Johs Avallone Aviles, LLP as Interim Class Counsel pursuant to Rule 23(g)(3) to act on behalf of the Settlement Class Representatives and the Settlement Class pending final approval of the Settlement. Doc. 120 at ¶ 10. Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Plaintiffs request that these counsel be appointed Class Counsel of the Settlement under Rule 23(g)(1).

The Court likewise preliminarily appointed Plaintiffs (identified in the Agreement) as the Settlement Class Representatives. Doc. 120 at ¶ 9. Because Plaintiffs have diligently and successfully fulfilled their responsibilities as the representatives of the Settlement Class, the Court should finally appoint Plaintiffs as the Settlement Class Representatives.

## VI.     CONCLUSION

For the foregoing reasons, and following the Final Approval Hearing on March 6, 2024, Plaintiffs respectfully request that the Court (1) certify the Settlement Class for settlement purposes (2) appoint Interim Class Counsel as Class Counsel and Plaintiffs as the Settlement Class Representatives; (3) finally approve the Settlement Agreement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e); (4) dismiss the case with prejudice pursuant to

the terms of the Settlement Agreement; and (5) order the Settlement Class Members bound by the releases set forth in the Settlement Agreement.

Dated: February 14, 2024                                Respectfully submitted,

                                                        */s/ Joshua L. Hedrick*
                                                        **SPENCER FANE LLP**
                                                        Joshua L. Hedrick
                                                        Mark A. Fritsche

                                                        **STUEVE SIEGEL HANSON LLP**
                                                        Patrick J. Stueve
                                                        J. Austin Moore
                                                        Abby McClellan
                                                        Crystal Cook Leftridge
                                                        Jordan A. Kane

                                                        **LEWIS JOHS AVALLONE AVILES, LLP**
                                                        James F. Murphy
                                                        Jordan S. Palatiello
                                                        Michael J. Del Piano

                                                        **REESE LLP**
                                                        Michael R. Reese

                                                        *Interim Class Counsel for the Settlement Class*

## CERTIFICATE OF SERVICE

On February 14, 2024, I caused to be electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                        */s/ Joshua L. Hedrick*
                                                        Joshua L. Hedrick